ACCEPTED
13-15-00218-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/24/2015 4:54:59 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00218-CV

IN THE THIRTEENTH COURT OF APPEALS DISTRICT OF TEXAS-
CORPUS CHRISTI-EDINBURG

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/24/2015 4:54:59 PM
CECILE FOY GSANGER
Clerk

CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO
TORRES AND JOE E. VEGA

Appellants

*VS.*

JUAN JOSE "JJ" ZAMORA, SR. AND MARTIN C. CANTU
Appellees

On Appeal from the 444th Judicial District Court of Cameron County, Texas
Cause No. 2015-DCL-02342

## APPELLANT GUILLERMO TORRES', INDIVIDUALLY, BRIEF

Frank E. Pérez
State Bar No. 15776540
Frank E. Pérez & Associates, P.C.
300 Mexico Boulevard
Brownsville, Texas 78520
Telephone:  (956) 504-5403
Facsimile:   (956) 504-5991
E-mail: fperez@feperezandassociates.com

**ATTORNEY FOR APPELLANT
GUILLERMO TORRES, INDIVIDUALLY**

**ORAL ARGUMENT REQUESTED**

---

## A. INDENTITY OF PARTIES AND COUNSEL
_____

Pursuant to Tex. R. App.P.38.1(a), Guillermo Torres, Individually, Appellant herein, certifies that the following is a complete list of all parties and the names and addresses of all counsel.

**<u>Appellant</u>**

City of Port Isabel, Texas

**<u>Appellant's Counsel</u>**

Robert L. Collins
State Bar No. 04618100
Audrey Guthrie
State Bar No. 24083116
Robert L. Collins & Associates
P.O. Box 7726
Houston, Texas 77270-7726
Telephone: (713) 467-8884
Facsimile: (713) 467-8883
E-mail: houstonlaw1@aol.com
E-mail: theaudlawyer@icloud.com

**<u>Appellant</u>**

Maria De Jesus Garza

**<u>Appellant's Counsel</u>**

Michael R. Cowen
State Bar No. 00795306
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521

Telephone:   (956) 541-4981
Facsimile:    (956) 504-3674
E-mail: michael@cowenlaw.com

## Appellant

Joe E. Vega

## Appellant's Counsel

Michael R. Cowen
State Bar No. 00795306
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
Telephone:   (956) 541-4981
Facsimile:    (956) 504-3674
E-mail: michael@cowenlaw.com

## Appellant

Guillermo Torres, Individually

## Appellant's Counsel

Frank E. Pérez
State Bar No. 15776540
Frank E. Perez & Associates, P.C.
300 Mexico Boulevard
Brownsville, Texas 78520
Telephone:   (956) 504-5403
Facsimile:    (956) 504-5991
E-mail: fperez@feperezandassociates.com

## Appellee

Juan Jose "JJ" Zamora, Sr.

**Appellee's Counsel**

Mr. Gilberto Hinojosa
State Bar No. 0970110
Law Office of Gilberto Hinojosa & Associates, PC
622 East St. Charles Street
Brownsville, TX 78520
Telephone:   (956) 544-4218
Facsimile:    (956) 544-1335
E-mail: ghinojosa@ghinojosalaw.net


**Appellee**

Martin C. Cantu

**Appellee's Counsel**

Mr. Gilberto Hinojosa
State Bar No. 0970110
Law Office of Gilberto Hinojosa & Associates, PC
622 East St. Charles Street
Brownsville, TX 78520
Telephone:   (956) 544-4218
Facsimile:    (956) 544-1335
E-mail: ghinojosa@ghinojosalaw.net

# B. TABLE OF CONTENTS

A. Identity of Parties and Counsel…..……………………………... Page ii

B. Table of Contents…………………………………………... Page v

C. Index of Authorities……………………………………. Page vii

D. Statement of the Case…………………………………… Page viii

E. Request for Oral Argument……………………………... Page ix

F. Issues Presented: Page x

    Issue Number One- Trial Court Action after May 12, 2015 is Void    Page x

    Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous    Page x

G. Statement of Facts………………………………………….. Page 1

H. Summary of the Argument………………………………… Page 3

    Issue Number One-Trial Court Action after May 12, 2015 is Void    Page 3

    Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous    Page 3

I. Argument …………………………………………………….. Page 4

    Issue Number One-Trial Court Action after May 12, 2015 is Void    Page 4

    Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous    Page 4

J. Prayer…………………………………………………….... Page 7

K. Certificate of Compliance………………………………… Page 8

L.  Certificate of Service……………………………………….  Page 9

M.  Appendix……………………………………………………  Page 10

    Order Denying City of Port Isabel's Plea to the Jurisdiction signed on April 24, 2015……………………………………..  Tab A

    Tex. Civ. Prac. & Rem. Code §51.014…………………………..  Tab B

    Plaintiffs' Notice of Nonsuit without Prejudice filed on May 15, 2015…………………………………………………  Tab C

    Plaintiffs' Withdrawal of Plaintiffs' Notice of Nonsuit without Prejudice and Request for Reinstatement filed on May 18, 2015……………………………………………………….  Tab D

    Order Reinstating Plaintiffs' Suit signed on May 18, 2015…….  Tab E

    Defendants' Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement filed on May 19, 2015……………………………………………………….  Tab F

    Defendants' Amended Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement filed on June 1, 2015……………………………………………………….  Tab G

    Plaintiffs' Notice of Nonsuit without Prejudice of Guillermo Torres filed on June 10, 2015………………………………  Tab H

    Order of Dismissal without Prejudice of Guillermo Torres signed on June 15, 2015……………………………………..  Tab I

# C. INDEX OF AUTHORITIES

**CASES**     **PAGE**

*Ballantyne v Champion Builders, Inc.*,
     144 S.W. 3d 417 (Tex. 2004) ......................................................................6

*Bland Independent School District v. Blue*,
     34 S.W.3d 547 (Tex. 2000). ......................................................................4

*In re Marriage of J.B.*
     326 S.W.3d 654, 662 (Tex.App.-Dallas 2010, pet. argued 11-5-13) ..........4

*Kassen v. Hatley*,
     887 S.W. 2d 4 (Tex. 1994) ......................................................................7

*Telthorster v. Tennell*,
     92 S.W.3d 457 (Tex. 2002) ......................................................................6

*Texas Ass'n of Bus. v. Texas Air Control Bd.,*
     852 S.W.2d 440, 446 (Tex.1993) ..............................................................5

*Texas Department of Criminal Justice v. Miller*,
     51 S.W.3d 583, 587 (Tex. 2001) ...........................................................4, 5

*Texas Department of Transportation v. Jones*,
     8 S.W.3d 636 (Tex. 1999) ......................................................................4

*Texas Natural Resource & Conservation Comm'n v. White*
     46 S.W.3d. 864, 868 (Tex.2001) ..............................................................6

**STATUTES**

Tex. Civ. Prac. & Rem. Code §51.014 ...................................................... 2, 3, 4

# D. STATEMENT OF THE CASE

This case is a suit for permanent injunction and declaratory relief after a vote by the City Commission of the City of Port Isabel, Texas to vacate two City Commission seats (those of J. J. Zamora and Martin Cantu) pursuant to the City Charter section 2.02 and 2.03.

# E. REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 38.1(e) of the Texas Rules of Appellate Procedure, Appellant Guillermo Torres requests that the Court grant oral argument for the following reasons:

a.    Oral argument would give the Court a more complete understanding of the facts presented in this appeal; and

b.    Oral argument would significantly aid the Court in deciding this case.

# F. ISSUES PRESENTED

## *Issue Number One-Trial Court Action after May 12, 2015 is Void*

Any action taken by Zamora and Cantu in the trial court after May 12, 2015, and all orders entered by the trial court after May 12, 2015 (the date City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega filed their interlocutory appeal and their Notice of Stay) is void, and Zamora and Cantu's claims against Guillermo Torres are pending and ripe for this Court to consider and decide.

## *Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous*

The trial court's determination that City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega's Plea to the Jurisdiction should be denied is erroneous because Zamora and Cantu's mere references to statutes that purport to waive governmental immunity or establish a state's consent to be sued are insufficient to confer jurisdiction on the trial court; and Zamora and Cantu failed to introduce evidence to establish a waiver of sovereign immunity sufficient to overcome a plea to the jurisdiction.

# G. STATEMENT OF FACTS

Zamora and Cantu filed their Original Petition on April 15, 2015. (CR 001:2)

City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega filed their Plea to the Jurisdiction and Original Answer on April 20, 2015. (CR: 001:23)

Zamora and Cantu filed their Third Amended Petition on April 23, 2015. (CR 001:90)

The trial court held a hearing on City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega's Plea to the Jurisdiction and on Zamora and Cantu's Motion for Temporary Injunction on April 24, 2015. (RR: 1:1)

On April 24, 2015 the trial court denied City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega's Plea to the Jurisdiction and granted Zamora and Cantu's Motion for Temporary Injunction. (RR: 1:121)

On April 24, 2015 the trial court signed and entered its Order Denying City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega's Plea to the Jurisdiction. (CR: 001:101) (App. Tab A)

City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega appealed the trial court's order denying their plea to the jurisdiction on May 12, 2015. (CR 001:102)

On May 12, 2015 the City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega notified the trial court and the parties that all matters in the trial court were stayed by virtue of the appeals, as provided in §51.014 of the Texas Civil Practices and Remedies Code. (CR 001:110) (App. Tab B)

On May 15, 2015 Zamora and Cantu filed their nonsuit of City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega. (App. Tab C)

On May 18, 2015 Zamora and Cantu filed their Withdrawal of their nonsuit and motion to reinstate. (App. Tab D)

The trial court granted this motion on that same date. (App. Tab E)

On May 19, 2015 and June 1, 2015 City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega filed their Motion to Reconsider and Amended Motion to Reconsider, again advising the trial court and the parties that all matters in the trial court were stayed by virtue of the appeals, as provided in §51.014, CPRC. (App. Tabs F and G)

On June 10, 2015 Zamora and Cantu filed their notice of nonsuit as to Guillermo Torres. (App. Tab H)

On June 15, 2015 the trial court granted this nonsuit. (App. Tab I)

# H. SUMMARY OF THE ARGUMENT

## *Issue Number One-Trial Court Action after May 12, 2015 is Void*

In the trial court, Zamora and Cantu attempted to nonsuit all claims against Guillermo Torres twice. Zamora and Cantu withdrew their nonsuit after the first time and asked for a reinstatement, which the trial court granted without a hearing. Zamora and Cantu nonsuited their claims against Guillermo Torres again, which the trial court granted without hearing. Each attempted and purported nonsuit was filed after Guillermo Torres had filed his Notice of Appeal, after filing his Notice of Stay pursuant to Section 51.014, C.P.R.C., and during the effective period of the automatic stay. The nonsuits were, therefore, void.

## *Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous*

Zamora and Cantu failed to plead or prove any facts sufficient to establish a waiver of sovereign immunity, or the City of Port Isabel's consent to be sued. Zamora and Cantu's live pleading in the trial court, their Third Amended Petition, contains mere vague references to statutes and rules that do not suffice to confer jurisdiction on the trial court. Further, Zamora and Cantu failed to introduce facts, evidence, involving their particular case sufficient to allow the trial court to determine whether immunity was waived or consent given.

# I. ARGUMENT

*Issue Number One-Trial Court Action after May 12, 2015 is Void*

Section 51.014(b), C.P.R.C., provides that an interlocutory appeal under subsection (a)(8) stays the commencement of a trial in the trial court and all other proceedings in the trial court pending resolution of the appeal. Therefore, any action taken by Zamora and Cantu in the trial court after May 12, 2015, and all orders entered by the trial court after May 12, 2015 (the date City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega filed their interlocutory appeal and their Notice of Stay) are void. See *In re Marriage of J.B.*, 326 S.W.3d 654, 662 (Tex.App.-Dallas 2010, pet. argued 11-5-13) ("An order signed during a stay is a 'legal nullity.'").

Each of the following cases involve a stay under §51.014, C.P.R.C., and its nullifying effect of actions taken in violation of that stay.

Zamora and Cantu's claims against Guillermo Torres are pending.

*Issue Number Two-The Denial of the Plea to the Jurisdiction is Erroneous*

The trial court's determination that City of Port Isabel, Texas, Maria De Jesus Garza, Guillermo Torres, and Joe E. Vega's Plea to the Jurisdiction should be denied is erroneous under the Texas Supreme Court's holdings in *Texas Department of Transportation v. Jones*, 8 S.W.3d 636 (Tex. 1999) (per curium); *Bland Independent School District v. Blue*, 34 S.W.3d 547 (Tex. 2000); and *Texas*

*Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). In those cases the Supreme Court has made clear that mere references to statutes that purport to waive governmental immunity or establish a state's consent to be sued are insufficient to confer jurisdiction on the trial court. Zamora and Cantu's Third Amended Petition does not contain a paragraph alleging any particular jurisdictional facts or law. (CR 001:90-100) Throughout Zamora and Cantu's pleadings, including their latest live pleadings (Plaintiffs' Third Amended Petition), Zamora and Cantu merely reference statutes they claim waive governmental immunity or cite statutes they claim establish this state's consent to be sued. (CR 001:94; 95, consent, case law; 95, C.P.R.C.; 96, City Charter)

However, Zamora and Cantu bear the greater burden of establishing, with evidence, a waiver of sovereign immunity sufficient to overcome a plea to the jurisdiction. In *Miller*, the Supreme Court stated that, after reviewing the terms of the applicable statute purportedly conferring jurisdiction, the court must then, "consider the particular facts of the case before us to determine whether it comes within that scope." *Miller*, 51 S.W.3d at 587. The *Miller* court went on to state that a "court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." Therefore, to decide whether Jeannie Miller has "affirmatively demonstrate[d] the court's jurisdiction to hear the cause," *Texas*

*Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993), "we consider the facts alleged by the plaintiff, and to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Texas Natural Resource & Conservation Commission v. White,* 46 S.W.3d. 864, 868 (Tex.2001). Zamora and Cantu introduced no evidence sufficient to allow the trial court to determine whether Zamora and Cantu had established subject matter jurisdiction.

Appellant Torres respectfully submits that, contrary to Zamora and Cantu's bare assertions of statutes that purportedly confer jurisdiction, their pleadings unequivocally establish, factually, that Torres acted in his official capacity only, and therefore, Zamora and Cantu's allegations actually negate the subject matter jurisdiction. (CR 001:93) Torres submits that Plaintiffs' Third Amended Petition does not allege "individual" action by Torres. Indeed, during the hearing on April 24, 2015, Cantu affirmatively stated that at the same meeting of which Zamora and Cantu now complain, he voted to oust Torres, but was acting in good faith as per the City Charter. (RR 1:97, 104)

*Official Immunity*

Zamora and Cantu allege that Torres acted as a Commissioner of the City of Port Isabel. (RR 1:93) As such he was a government official. See *Telthorster v. Tennell*, 92 S.W.3d 457 (Tex. 2002). Further, allegations establish that Torres' acts were only discretionary and governmental. (RR 1:93) See *Ballantyne v*

*Champion Builders, Inc.*, 144 S.W. 3d 417 (Tex. 2004); and *Kassen v. Hatley*, 887 S.W. 2d 4 (Tex. 1994). Zamora and Cantu never alleged nor provided evidence that Torres acted in any capacity other than as a Commissioner of the City of Port Isabel.

Zamora and Cantu, therefore, failed to satisfy their burden of establishing that the trial court had subject matter jurisdiction over Torres in his individual capacity; and the trial court's denial of Torres' plea to the jurisdiction was erroneous.

### *Adoption of Brief Filed by Robert Collins*

Appellant Guillermo Torres adopts by reference the arguments made in the brief filed by Robert Collins as attorney for Appellant City of Port Isabel.

### J. PRAYER

Appellant Guillermo Torres asks that this Court reverse the trial court's denial of his Plea to the Jurisdiction, dismiss Zamora and Cantu's claims against him, find that Appellant is protected by the doctrines of official immunity, and for such other and further relief to which Appellant Guillermo Torres may show himself justly entitled.

Respectfully submitted,

**FRANK E. PÉREZ & ASSOCIATES, P.C.**

By:    */s/ Frank E. Pérez*
         Frank E. Pérez

State Bar No. 15776540
300 Mexico Boulevard
Brownsville, Texas 78520
Telephone: (956) 504-5403
Facsimile: (956) 504-5991
ATTORNEY FOR APPELLANT
GUILLERMO TORRES,
INDIVIDUALLY

## K. CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant Guillermo Torres', Individually, Brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 1,512 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ Frank E. Pérez*
Frank E. Pérez & Associates, P.C.

# L. CERTIFICATE OF SERVICE

I hereby certify that on this the **24th day of June 2015**, a true and correct copy of the foregoing instrument has been served upon counsel of record by the following method:

**VIA E-SERVICE**
Mr. Gilbert Hinojosa
Law Office of Gilberto Hinojosa & Associates, PC
622 East St. Charles Street
Brownsville, TX 78520
Attorney for Appellees Juan Jose "JJ" Zamora
and Martin C. Cantu

**VIA E-SERVICE**
Mr. Robert L. Collins
Robert L. Collins & Associates
P.O. Box 7726
Houston, Texas 77270-7726
Attorney for Appellants City of Port Isabel, Texas

**VIA E-SERVICE**
Mr. Michael R. Cowen
The Cowen Law Group
62 E. Price Road
Brownsville, TX 78521
Attorney for Appellants Joe E. Vega
and Maria de Jesus Garza

_/s/ Frank E. Pérez_
Frank E. Pérez & Associates, P.C.

# M. APPENDIX

| | |
|---|---|
| Order Denying City of Port Isabel's Plea to the Jurisdiction signed on April 24, 2015…………………………………………………………... | Tab A |
| Tex. Civ. Prac. & Rem. Code §51.014………………………………….. | Tab B |
| Plaintiffs' Notice of Nonsuit without Prejudice filed on May 15, 2015…………………………………………………………………. | Tab C |
| Plaintiffs' Withdrawal of Plaintiffs' Notice of Nonsuit without Prejudice and Request for Reinstatement filed on May 18, 2015 …………………………………………………………………… | Tab D |
| Order Reinstating Plaintiffs' Suit signed on May 18, 2015………………………………………………………………….. | Tab E |
| Defendants' Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement filed on May 19, 2015…………………….. | Tab F |
| Defendants' Amended Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement filed on June 1, 2015…………………………………………………………………….. | Tab G |
| Plaintiffs' Notice of Nonsuit without Prejudice of Guillermo Torres filed on June 10, 2015…………………………………………………… | Tab H |
| Order of Dismissal without Prejudice of Guillermo Torres signed on June 15, 2015…………………………………………………. | Tab I |

CAUSE NO. 2015-DCL-02342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. AND MARTIN C. CANTU,<br>    Plaintiffs, | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § | CAMERON COUNTY, T E X A S |
| CITY OF PORT ISABEL, TEXAS; MARIA de JESUS GARZA, GUILLERMO TORRES, AND JOE E. VEGA,<br>    Defendants. | § § § § § § | 444th JUDICIAL DISTRICT |

## ORDER DENYING CITY OF PORT ISABEL'S PLEA TO THE JURISDICTION

BE IT REMEMBERED that on the _____ day of April, 2015, came on to be heard the Defendant City of Port Isabel's Plea to the Jurisdiction. All parties appeared through their respective attorneys of record and submitted argument and authorities to the Court. After hearing such argument and considering the pleadings and briefs filed by the parties, the Court is of the opinion that Defendants' motion should be denied.

It is hereby Ordered by this Court that the Defendant City of Port Isabel's Plea to the Jurisdiction is DENIED.

SIGNED AND ENTERED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

COPIES TO:
Robert L. Collins, P.O. Box 7726, Houston, Texas 77270-7726
Michael R. Cowen, 62 E. Price Road, Brownsville, TX 78521
Frank E. Perez , 300 Mexico Boulevard, Brownsville, TX 78520
Gilbert Hinojosa, 622 East St. Charles St., Brownsville, Texas 78520

FILED 3:30 o'clock _P_ M
ERIC GARZA - DISTRICT CLERK

APR 24 2015

DISTRICT COURT OF CAMERON COUNTY, TEXAS
By_____Deputy #19

1

PDF created with pdfFactory Pro trial version www.pdffactory.com

[¶] The face of the record ... consists of all the papers on file in the appeal, including the statement of facts. [R]eview of the entire case includes review of legal and factual insufficiency claims." *See also Fowler v. Quinlan ISD*, 963 S.W.2d 941, 943 (Tex.App.— Texarkana 1998, no pet.).

## CPRC §51.012. APPEAL OR WRIT OF ERROR TO COURT OF APPEALS

In a civil case in which the judgment or amount in controversy exceeds $250, exclusive of interest and costs, a person may take an appeal or writ of error to the court of appeals from a final judgment of the district or county court.

History of CPRC §51.012: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985. Amended by Acts 2009, 81st Leg., ch. 1351, §1, eff. Sept. 1, 2009.

See also Gov't Code §§22.220, 26.042(c); TRAP 30 (under TRAP 30, the appeal by writ of error procedure is repealed; in its stead, the Supreme Court adopted a "restricted appeal"); *O'Connor's Texas Rules*, "Choosing the Court—Jurisdiction," ch. 2-F, p. 131.

### ANNOTATIONS

*Texas Integrated Conveyor Sys. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 361 (Tex. App.—Dallas 2009, pet. denied). "A judgment issued without a conventional trial on the merits is final for purposes of appeal if it: (1) actually disposes of all claims and all parties before the court; or (2) states with unmistakable clarity it is a final judgment as to all claims and all parties."

*Zepeda v. Giraud*, 880 S.W.2d 833, 834 (Tex. App.—San Antonio 1994, writ denied). "The right to appeal by writ of error to the court of appeals is provided by [CPRC] §51.012.... This code provision also establishes the right to take an ordinary appeal. It is clear that the statute establishes the right to take either an ordinary appeal *or* an appeal by writ of error. A litigant has the right to either an ordinary appeal or an appeal by writ of error but not both."

## CPRC §51.013. TIME FOR TAKING WRIT OF ERROR TO COURT OF APPEALS

In a case in which a writ of error to the court of appeals is allowed, the writ of error may be taken at any time within six months after the date the final judgment is rendered.

History of CPRC §51.013: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985.

See also TRAP 30 (under TRAP 30, the appeal by writ of error procedure is repealed; in its stead, the Supreme Court adopted a "restricted appeal").

### ANNOTATIONS

*General Elec. Co. v. Falcon Ridge Apts., Jt.V.*, 811 S.W.2d 942, 943 (Tex.1991). "A direct attack on a judgment by writ of error must: (1) be brought within six months after the judgment was signed; (2) by a party to the suit; (3) who did not participate in the actual trial; (4) and the error complained of must be 'apparent from the face of the record.'"

## CPRC §51.014. APPEAL FROM INTERLOCUTORY ORDER

(a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

(7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

(8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

(9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

(10) grants relief sought by a motion under Section 74.351(*l*); or



**(11)** denies a motion to dismiss filed under Section 90.007.

**(b)** An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), or (8) also stays all other proceedings in the trial court pending resolution of that appeal.

**(c)** A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

**(1)** a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

**(2)** the 180th day after the date the defendant files:

**(A)** the original answer;

**(B)** the first other responsive pleading to the plaintiff's petition; or

**(C)** if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

**(d)** On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

**(1)** the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

**(2)** an immediate appeal from the order may materially advance the ultimate termination of the litigation.

**(d-1)** Subsection (d) does not apply to an action brought under the Family Code.

**(e)** An appeal under Subsection (d) does not stay proceedings in the trial court unless:

**(1)** the parties agree to a stay; or

**(2)** the trial or appellate court orders a stay of the proceedings pending appeal.

**(f)** An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court

signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

History of CPRC §51.014: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 167, §3.10, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 915, §1, eff. June 14, 1989; Acts 1993, 73rd Leg., ch. 855, §1, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1296, §1, eff. June 20, 1997; Acts 2001, 77th Leg., ch. 1389, §1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 204, §1.03, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 97, §5 (eff. Sept. 1, 2005), ch. 1051, §§1, 2 (eff. June 18, 2005); Acts 2011, 82nd Leg., ch. 203, §3.01, eff. Sept. 1, 2011.

See also Gov't Code §22.225(b)(3); TRAP 28; TRCP 681; *O'Connor's Texas Appeals*, "Considerations Before Appeal," ch. 1-B, p. 4; *O'Connor's Texas Rules*, "Special Appearance—Challenging Personal Jurisdiction," ch. 3-B, p. 187; "Motion for Summary Judgment—General Rules," ch. 7-B, p. 579; "The Judgment," ch. 9-C, p. 740.

### ANNOTATIONS

### *Generally*

**City of Houston v. Swinerton Builders, Inc.,** 233 S.W.3d 4, 8 (Tex.App.—Houston [1st Dist.] 2007, no pet.). "Generally, an appellant may amend its petition in such a way as to render an interlocutory appeal moot, thereby depriving the appellate court of jurisdiction. *At 9:* [D] is correct that the 2003 amendment to §51.014 ... differentiates this case from the general rule. ... We conclude that [P's] actions before the trial court [to dismiss its quantum-meruit claim] are ... without force, and do not deprive this court of jurisdiction over the present interlocutory appeal."

**Kaplan v. Tiffany Dev. Corp.,** 69 S.W.3d 212, 217 (Tex.App.—Corpus Christi 2001, no pet.). "When a party appeals from two interlocutory orders, only one of which is made appealable by statute, the proper course is to dismiss that portion which is non-appealable, and to rule on the portion from which an appeal may be taken." *See also* **Sanders v. City of Grapevine,** 218 S.W.3d 772, 776 (Tex.App.—Fort Worth 2007, pet. denied).

**Evans v. C. Woods, Inc.,** 34 S.W.3d 581, 583 (Tex. App.—Tyler 1999, no pet.). "[W]e ... hold that [CPRC] §51.014(b) does not absolve the trial court from its mandatory [TRCP] 683 duty to include within its temporary injunction order an order setting the cause for trial on the merits."

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

<u>PLAINTIFFS' NOTICE OF NONSUIT WITHOUT PREJUDICE</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Juan Jose "JJ" Zamora Sr., and Martin C. Cantu and file this their Notice of Non-Suit Without Prejudice Against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas and would show unto the court the following:

I.

Please take notice that Plaintiffs hereby non-suits without prejudice, all of their respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas. Plaintiffs respectfully request that the court sign an order of Non-suit without prejudice regarding all of Plaintiffs respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas.

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the court

take notice of Plaintiffs non-suit without prejudice and sign an order of Non-Suit without prejudice regarding all of Plaintiffs respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas.

Respectfully submitted,

**Gilberto Hinojosa & Associates**
622 E. St. Charles
Brownsville, Texas 78520
Tel: (956) 544-4218
Fax: (956) 544-1335

Gilberto Hinojosa
Texas Bar No.: 0970110
ghinojosa@ghinojosalaw.net

## CERTIFICATE OF SERVICE

I certify that on May 15, 2015, a true and correct copy of the foregoing instrument was served to the following:

Robert L. Collins
Robert L. Collins & Associates
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467 8883 Fax
houstonlaw2@aol.com

Michael R. Cowen
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
(956) 541-4981
(956) 504-3674 Fax
michael@cowenlaw.com

Frank E. Perez
Frank E. Perez & Associates, PC
300 Mexico Blvd.
Brownsville, Texas 78520
(956) 504-5403
(956) 504-5991 Fax
fperez@feperezandassociates.com

Gilberto Hinojosa

CAUSE NO. 2015-DCL-2342

| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## ORDER OF DISMISSAL WITHOUT PREJUDICE

On this _____ day of _____, 2015, came on to be considered Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU, Notice of Nonsuit Without Prejudice concerning any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS in the above-styled and numbered cause and the Court is of the opinion that same should be granted.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS are hereby dismissed without prejudice.

SIGNED on this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

cc: houstonlaw2@aol.com
michael@cowenlaw.com
fperez@feperezandassociates.com
ghinojosa@ghinojosalaw.net

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' WITHDRAWAL OF PLAINTIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE AND REQUEST FOR REINSTATEMENT

## TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Plaintiffs, Juan Jose "JJ" Zamora Sr., and Martin C. Cantu and file this their Withdrawal of Plaintiff's Notice of Non-Suit Without Prejudice Against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas and Request for Reinstatement of Plaintiffs' claims against Defendants and would show unto the court the following:

I.

On May 15, 2015, Plaintiffs' filed Plaintiffs' Notice of Non-Suits without prejudice, all of their respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas. As a result of circumstances and events occurring this weekend, it has become apparent that the continued intervention of this Court is necessary and thereby, Plaintiffs respectfully request that this Court grant Plaintiff's motion to reinstate the case and continue its jurisdiction over this

dispute. The Order granting Plaintiff's Notice of Nonsuit has not been signed nor entered by the Court.

Plaintiffs respectfully request that the Court sign an order reinstating Plaintiffs respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas.

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court take notice withdrawal of Plaintiffs non-suit without prejudice and sign an order reinstating Plaintiffs respective claims and causes of action against Defendants City of Port Isabel, Texas, Maria de Jesus Garza, Guillermo Torres, Joe E. Vega, Ken Paxton, The Attorney General of Texas.

Respectfully submitted,

**Gilberto Hinojosa & Associates**
622 E. St. Charles
Brownsville, Texas 78520
Tel: (956) 544-4218
Fax: (956) 544-1335

Gilberto Hinojosa
Texas Bar No.: 0970110
ghinojosa@ghinojosalaw.net

## CERTIFICATE OF SERVICE

I certify that on May 18, 2015, a true and correct copy of the foregoing instrument was served to the following:

Robert L. Collins
Robert L. Collins & Associates
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467 8883 Fax
houstonlaw2@aol.com

Michael R. Cowen
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
(956) 541-4981
(956) 504-3674 Fax
michael@cowenlaw.com

Frank E. Perez
Frank E. Perez & Associates, PC
300 Mexico Blvd.
Brownsville, Texas 78520
(956) 504-5403
(956) 504-5991 Fax
fperez@feperezandassociates.com

Gilberto Hinojosa

**STATE OF TEXAS**

**CAMERON COUNTY**

## VERIFICATION OF MARTIN C. CANTU

Before me, the undersigned notary, on this day personally appeared Martin C. Cantu the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follow:

"My name is Martin C. Cantu. I am over 18 years of age. I am of sound mind and competent to testify to the facts set forth herein. I have read the attached Plaintiffs' Withdrawal of Notice of Non-Suit and Request for Reinstatement and the facts stated herein are within my personal knowledge and are true and correct".

Further affiant sayeth not."

_____
Martin C. Cantu

SWORN TO and SUBSCRIBED before me by Martin C. Cantu on May __18th__, 2015.

_____
Notary Public in and for the State of Texas

NOTARY PUBLIC
STATE OF TEXAS
Sandra Lopez
My Commission Expires
12/17/2016

**STATE OF TEXAS**

**CAMERON COUNTY**

### VERIFICATION OF JUAN JOSE "J.J." ZAMORA SR.

Before me, the undersigned notary, on this day personally appeared Juan Jose "J.J." Zamora the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follow:

"My name is Juan Jose "J.J." Zamora. I am over 18 years of age. I am of sound mind and competent to testify to the facts set forth herein. I have read the attached Plaintiffs' Withdrawal of Notice of Non-Suit and Request for Reinstatement and the facts stated herein are within my personal knowledge and are true and correct".

Further affiant sayeth not."

_____
Juan Jose "J.J." Zamora

SWORN TO and SUBSCRIBED before me by Juan Jose "J.J." Zamora on May __18th__, 2015.

Sandra Lopez
My Commission Expires
12/17/2016

_____
Notary Public in and for the State of Texas

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## ORDER REINSTATING PLAINTIFFS' SUIT

On this _____ day of _____, 2015, came on to be considered Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU, Withdrawal of Plaintiffs' Notice of Nonsuit Without Prejudice and Request for Reinstatement of Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU claims against Defendant CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS in the above-styled and numbered cause and the Court is of the opinion that same should be granted.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that any and all individual claims of Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU are reinstated against Defendants CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS.

SIGNED on this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

cc: houstonlaw2@aol.com
michael@cowenlaw.com
fperez@feperezandassociates.com
ghinojosa@ghinojosalaw.net

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## ORDER REINSTATING PLAINTIFFS' SUIT

On this 18th day of MAY, 2015, came on to be considered Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU, Withdrawal of Plaintiffs' Notice of Nonsuit Without Prejudice and Request for Reinstatement of Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU claims against Defendant CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS in the above-styled and numbered cause and the Court is of the opinion that same should be granted.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that any and all individual claims of Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU are reinstated against Defendants CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS, as well as all prior orders issued by this Court.

SIGNED on this the 18 day of May, 2015.

FILED 1:30 o'clock P M

**ERIC GARZA** - DISTRICT CLERK

JUDGE PRESIDING

MAY 19 2015

DISTRICT COURT OF CAMERON COUNTY, TEXAS

By _____ Deputy #19

COPIES TO:5/19/15
GILBERTO HINOJOSA
FRANK PEREZ
MICHAEL COWEN
ROBERT COLLINS

PDF created with pdfFactory trial version www.pdffactory.com

CAUSE NO. 2015-DCL-02342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. AND<br>MARTIN C. CANTU,<br>    Plaintiffs, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | CAMERON COUNTY, T E X A S |
| CITY OF PORT ISABEL, TEXAS;<br>MARIA de JESUS GARZA,<br>GUILLERMO TORRES, JOE E. VEGA,<br>and KEN PAXTON, THE ATTORNEY<br>GENERAL OF TEXAS<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | 444th JUDICIAL DISTRICT |

## DEFENDANTS' MOTION TO RECONSIDER PLAINTIFFS' MOTION TO REINSTATE AND TO DENY REINSTATEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant City of Port Isabel, Texas ("City"), and files this Defendants' Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement, and would respectfully show unto the court as follows:

## I.

1.    This Court heard Plaintiffs' Application for Temporary Injunction on April 24, 2015, and indicated that an Order would be granted to Plaintiffs. At the conclusion of that hearing, this Court signed an Order denying all Pleas to the Jurisdiction. No Temporary Injunction Order was signed. Plaintiff Martin Cantu committed demonstrable perjury in his testimony given at that hearing. (See Exhibit A – testimony excerpt of Martin Cantu). Cantu's perjury relates to his testimony about a fictional EDC (Economic Development Corporation) meeting he described in great detail. By his false testimony to this Court, Cantu claimed that he was at that EDC meeting and that he participated in a closed door Executive Session during the EDC meeting. Cantu also testified that the Port Isabel City Attorney attended that EDC

1

meeting and, according to Cantu's sworn testimony, the City Attorney is alleged to have made certain representations about the actions of Guillermo Torres alleged by Cantu to have been carried out in that EDC Executive Session. Cantu testified that Torres attended that EDC Executive Session meeting and that Torres argued in favor of a loan in that EDC Executive Session that would have benefitted Torres. Cantu attempted to claim that Torres had committed a crime by this action. Cantu testified under oath and in open court to these alleged "facts" in his corrupt effort to persuade this Court that he had been somehow wronged when he was removed from the Port Isabel City Commission for his own illegal activities.

2. Cantu lied under oath and committed perjury. There was no such Executive Session in that meeting of the Port Isabel EDC. (See Exhibit B attached – Minutes of the EDC meeting described by Cantu, demonstrating that Cantu was not present, the City Attorney was not present, there was NO Executive Session at all, and Torres abstained on the vote of the relevant item, which proves irrefutably that Cantu committed perjury.) At the conclusion of that Temporary Injunction hearing, the Court signed an Order denying all Pleas to the Jurisdiction. No Temporary Injunction Order was signed, although the Court did state that he would sign one.

3. On May 12, 2015, at 11:04 a.m., the City appealed the Order Denying the Pleas to Jurisdiction, which automatically stayed any further action by the District Court. CP&RC Sec. 51.014(b). Notice of that filing and resulting Stay was delivered to Plaintiffs' counsel by eservice contemporaneously with the e-filing at 11:04 a.m. on May 12. Defendant Torres filed a pleading giving further notice of the Stay on May 12 at 3:52 p.m. As of that time, and indeed to this date, there is no evidence of any Temporary Injunction Order having been signed on the Court's docket.

2

4.     On Tuesday, May 12, at a City Commission meeting, counsel for Plaintiff gave City Manager Edward Meza what appeared to be a copy of a signed Temporary Injunction Order. That purported Temporary Injunction Order revealed that it had been faxed to Plaintiff's counsel from the clerk at 3:51 p.m. on May 12. Again, there is no evidence of that signed Temporary Injunction Order on the Court's official docket.

5.     Plaintiffs posted Notice on Friday, May 15 that they would hold a Special Meeting of the City Commission of Port Isabel, and, claiming rights purportedly granted by the Temporary Injunction, that they planned to remove the City Attorney and replace counsel for the City, remove the City Manager and engage in replacement of the City Manager. See Exhibit C. Plaintiffs later claimed that the City Manager had already been replaced, by a known associate of Plaintiffs' counsel, Jared Hockema.

6.     In response to this, and to preserve the jurisdiction of the appellate Courts, Defendant Torres' counsel contacted Plaintiffs' counsel the afternoon of Friday, May 15, 2015, to advise that in accordance with the notice requirements of the TRAP, an Emergency Motion for Stay of the Temporary Injunction would be presented to the Court of Appeals on Monday, May 18.

7.     Plaintiffs' counsel responded by filing Notice of Nonsuit of the entire underlying case, this cause of action and all Orders previously signed, thereby attempting to deprive the appellate courts of any jurisdiction to prevent the coup planned by Plaintiffs' counsel to take over and dismiss the defense of this lawsuit, deprive the City of independent counsel, place his known associate, Jared Hockema. as the City Manager and likely name himself or another of his known associates as City Attorney.

3

8.     Once Plaintiffs learned of their lawyer's dismissal of the case and the fact that they were no longer subject of the Temporary Injunction Order that changed the status quo and allowed them to purport to control votes on the City Commission, Plaintiffs then demanded, on Saturday, May 16, 2015, that City employees open the locked doors to City Hall; they physically seized and occupied City Hall; they brought Jared Hockema to City Hall and pronounced to the Police Chief and other City employees that Mr. Hockema had been selected by them and City Commissioner Jeffrey Martinez to be the new City Manager of Port Isabel (in apparent direct violation by Plaintiffs and Jeffrey Martinez of the Texas Open Meetings Act, assuming Plaintiffs are lawful members of the City Commission); they compelled City employees to prepare and post Notice of a Special Meeting.   See Exhibit D. They demanded that the Police Chief and Police Captain of Port Isabel issue some kind of "Restraining Order" prohibiting the actual City Manager from entering City Hall; and they demanded that the Police Chief go to the City Manager's home and seize his keys to City buildings.

9.     Having thwarted the jurisdiction of the appellate courts by their nonsuit dismissal of this case and to further their attempts to carry out their unlawful coup and takeover of the City, Plaintiffs then sought to reinstate the case. Plaintiffs filed a motion to reinstate and, in an ex parte manner without notice or opportunity for Defendants to be heard, Plaintiffs obtained a signed order withdrawing the nonsuit and reinstating their case.   Plaintiffs now attempt to claim the Temporary Injunction Order vacated by their non-suit as a basis for them to publicly vote as a majority (even though they have already announced their decision to hire Jared Hockema and fire the current City Manager in violation of the Open Meetings Act); and to complete their takeover of the City government and their intended dismissal of the City's defenses to this action.

4

10. Plaintiffs voluntarily dismissed this case to deprive Defendants of redress through the appellate courts, and specifically to avoid Emergency Orders by the appellate courts that would stay the attempt to use the change of status quo effected by the purported Temporary Injunction to forever deny any review of their actions. This Court should go no further in granting extraordinary relief to these Plaintiffs. The Motion to Reinstate should be denied.

## PRAYER

Accordingly, the Defendant City of Port Isabel respectfully requests that the Court, after proper and adequate notice and a public hearing in accordance with the TRCP, which is hereby requested, reconsider Plaintiffs' Motion to Reinstate and Deny the Motion to Reinstate so that justice may be done, and so that this Court's discretion will not be used to deny appellate review.

Respectfully submitted,

ROBERT L. COLLINS & ASSOCIATES

Robert L. Collins
Texas Bar No. 04618100
Audrey Guthrie
Texas Bar No. 24083116
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467-8883 Facsimile
houstonlaw2@aol.com

ATTORNEYS FOR CITY OF
PORT ISABEL

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion in Opposition to Request for Reinstatement was sent to the following on the 19th day of May, 2015 via certified mail, return receipt requested, hand delivery, e-service and/or facsimile.

Mr. Gilbert Hinojosa
Law Office of Gilberto Hinojosa & Associates, PC
622 East St. Charles Street
Brownsville, TX 78520
Facsimile 956-544-1335
ghinojosa@ghinojosalaw.net

Michael R. Cowen
THE COWEN LAW GROUP
62 E. Price Road
Brownsville, TX 78521
(956) 504-3674 Facsimile
michael@cowenlaw.com

Frank E. Perez
FRANK E. PEREZ & ASSOCIATES, PC
300 Mexico Boulevard
Brownsville, TX 78520
 (956) 504-5991 Facsimile
fperez@feperezandassociates.com

ROBERT L. COLLINS

CAUSE NO. 2015-DCL-02342

| JUAN JOSE "JJ" ZAMORA, SR. AND | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CAMERON COUNTY, T E X A S |
| | § | |
| CITY OF PORT ISABEL, TEXAS; | § | |
| MARIA de JESUS GARZA, | § | |
| GUILLERMO TORRES, JOE E. VEGA, | § | |
| and KEN PAXTON, THE ATTORNEY | § | |
| GENERAL OF TEXAS | § | |
| Defendants. | § | 444th JUDICIAL DISTRICT |

## ORDER ON RECONSIDERATION AND REINSTATEMENT

BE IT REMEMBERED that on the____ day of May, 2015, came on to be heard the Plaintiff's Motion for Reconsideration of Reinstatement. All parties appeared through their respective attorneys of record and submitted argument and authorities to the Court. After hearing such argument and considering the pleadings and briefs filed by the parties, the Court is of the opinion that Plaintiff's Motion should be DENIED.

It is hereby Ordered by this Court that the Plaintiffs' Motion to Reinstate is DENIED.

SIGNED AND ENTERED this _____ day of _____, 2015.


_____
JUDGE PRESIDING

COPIES TO:
Robert L. Collins, P.O. Box 7726, Houston, Texas 77270-7726
Michael R. Cowen, 62 E. Price Road, Brownsville, TX 78521
Frank E. Perez , 300 Mexico Boulevard, Brownsville, TX 78520
Gilbert Hinojosa, 622 East St. Charles St., Brownsville, Texas 78520

7

# Exhibit A

it is you.

THE COURT:  Wow.  Okay.  Anybody want to -- wish to present evidence?

MR. PEREZ:  I'm sorry, what was the question, Your Honor?

THE COURT:  Any side wish to present evidence?

MR. PEREZ:  Well, I agree with the statement that --

MR. COWEN:  I'll call Martin Cantu, Your Honor.

THE COURT:  Okay.

MR. COWEN:  It will be very brief.

THE COURT:  Raise your right hand, sir.

(Witness duly sworn)

MARTIN C. CANTU,

having been first duly sworn, was called as a witness and testified as follows:

DIRECT EXAMINATION

BY MR. COWEN:

Q.  You're Martin Cantu, correct?

A.  Yes, sir.

Q.  And you were elected last election as a city commissioner in Port Isabel, correct?

A.  Yes, sir.

Q. There was a meeting on April 13th, 2015, correct?

A. Yes.

Q. You attended that meeting?

A. Yes.

Q. And Juan Jose Zamora also attended that meeting, correct?

A. Yes.

Q. You had notice that meeting was going to occur, correct?

A. I got notice at 4:59. I got a draft through fax. And I've got documents to show it. But, yes, there was a meeting going on and three of my items on the agenda were posted correctly, correct. But Mr. Guillermo Torres wasn't on that.

Q. You were planning on having the meeting the next day, correct? You were planning on having the meeting the next day, correct, on the 14th?

A. It's customary that on Fridays we turn in, by noontime on Fridays -- everyone that has an action item or anything for the agenda, we have to submit it by Friday noon. By Friday afternoon, we get our packet. This time I got a draft at 5:00 p.m. By 5:30, 6:00 o'clock at the latest, we get our packet.

At 6:30 that same afternoon, I got a call

from Ed, our city manager, that there was another item placed on the agenda similar to mine, but Memo Torres was placing an item to remove Commissioners Zamora and Commissioner Cantu.

Q. And you got that on Friday at about 6:30?

A. Yes.

Q. Okay.

A. I got a phone call.

Q. But you had knowledge --

A. At 6:30.

Q. So you had knowledge prior to the meeting that this was going to come up, correct?

A. I got my packet 7:30, was left at my house.

Q. On Friday?

A. On Friday, yes.

Q. And the meeting was Monday, correct?

A. Yes, special meeting, because our regular scheduled meetings are on Tuesdays and they also put it on the agenda, special meeting.

Q. But all they did was move the Tuesday meeting to Monday, correct?

A. I don't know for what reasons. I mean, they never do. It's always scheduled meetings Tuesdays, second and fourth Tuesday. It's in the ordinance.

Q. But you were still able to attend, right?

A. Our regular scheduled meetings.

Q. You were still able to attend the meeting, correct?

A. Yes.

Q. And Mr. Zamora was still able to attend the meeting, correct?

A. Yes.

Q. And with respect to the question of whether or not you did business with the City of Port Isabel, did moving the meeting from Tuesday to Monday prevent you from presenting evidence that you did not do business with the City of Port Isabel?

A. Well, I took action on Monday morning and visited the district attorney's office with the chief investigator there and another individual, another investigator. I told them what was going on, I provided documents also, and I showed them both agenda items, two different ones at 5:00, they were real interested and they made copies.

And we voiced out our concerns as to based on by certified mail that we received -- the city commission received by certified mail concerned citizens on several violations that Commissioner Torres had with the city charter.

On the bottom -- on the bottom of the

paragraph, the last paragraph, it clearly stated that if we continue and not take action on this item, we too would be removed from office on a recall, okay? Let me finish. On -- I visited with Ed Mesa on Friday before our agenda packets -- I mean, before our agenda items. It's customary, like I said, by Friday at noon.

So on Friday morning I visited with Ed and I asked, I said, "What is your recommendation towards these violations towards Mr. Memo Torres?" He couldn't answer. He said, "I can't answer. I'm not the city attorney."

I said, "Are you sure? You visited our city attorney. What is his comment or recommendation to this matter?" And he didn't comment.

I said, "Ed, you haven't spoken to him?"

"Yes."

"Well, I need a response from him. Have him call me, have him call me before 12:00 noon so I can discuss this matter so we can remedy this." And I said again, "But you've spoken to him, so what is his comment to you? Or what is going to be his recommendation or his answer to us," I asked Ed.

And he said, "He's already responded. It's in the press."

I said, "What?" And I had him -- I was

recording the conversation because he's lied in numerous times to me and I said, "You're talking about this, the Court of appeals, *Longview versus Hunt*? I thought this was Memo's ad, because right after that it's stamped the appraisal district where they can't foreclose on his property. In August 2014 they stamped that, that they can't foreclose on his property because he's over 65. I thought that was all -- so you're telling me our city attorney paid for this ad and that's his response from him to us?"

He said, "Yes. Yes."

I said, "Have him call me, please. Have him call me."

I mean, and I asked that -- furthermore, I asked, "Ed, do you think this commissioner is in direct violation of the city charter? Put on your pants." That's what I told him, "Put on your pants as the city manager and you address this issue with me." I said --

MR. HINOJOSA: Your Honor, I think his response is going way beyond the --

MR. COWEN: I just didn't want to be rude and interrupt him, Your Honor.

THE COURT: Do you have any other questions?

MR. COWEN: Yes, I do. I just didn't want

to be rude to the witness and interrupt him while he was speaking.

Q. (BY MR. COWEN) And, sir, the fact is you were doing business with the City, correct?

A. I never -- going back to the meeting, I never got a response. And I put it on the table back to our city attorney, I said, "Based on what I have for action for tonight" -- I gave my report -- I gave my report before the meeting. When the meeting started I gave my report because all commissioners give a report, and I gave my report just what I elaborate. Furthermore, when we were to take action on our first item, which was mine, I seeked legal advice.

I said, "Looking after the best interest of the City, what's your recommendation on this matter?"

He stands up and says, "It's your item. You deal with it."

Again, I asked him, "On behalf of the City, what is the" -- and I was looking for an answer, for him to say, "You know what, all this is unconstitutional" or "You can't take action. We have to go through this other" -- more or less we knew, but I had to respond to the citizens of Port Isabel.

It was a full crowd, people outside also. I had to take my actions to keep them from removing me,

the citizens, the people that voted me in.

Q. Okay. And then with all due respect, sir, my question was a little different than your answer. And I understand that this is emotional and I'm not going to interrupt you.

A. Oh, no, going back to your question -- yes, I'm familiar with it. Like I said, I went to the DA's office and told them -- and I clearly showed them, I mean, I think this is just clear retaliation. I submitted -- I submitted my items at 5:00 o'clock. They were posted. I received a draft, and at 6:30 I get a phone call. At 7:30 I get the actual agenda. So, I mean, it's clear retaliation.

And they were real interested, because after I left there, they came straight knocking on Ed's door at city hall.

Furthermore, I consulted with my attorney and I asked him, "Should we file a TRO?"

MR. COWEN: There might be some attorney-client privilege. I don't want him to waive it accidently.

MR. HINOJOSA: I'm asking him not to.

Q. (BY MR. COWEN) Sir, my question is -- and I understand you don't like --

A. I want the truth. That's what we're here for.

CORINNA N. GARCIA, CSR

Q.   Did you do business with the City of Port Isabel while you were a commissioner?

A.   Yes, I have, along with Commissioner Zamora and Guillermo Torres, and it's been addressed with the city manager and city attorney.  And I've been there for 20 years and I've heard it before, as long as we disclose it and we abstain from voting on that line item.  And I think we've also got some testimony to that, another witness.  Manuel De la Rosa also was inquiring on it a year ago.

Q.   But whether you had the hearing on Monday or Tuesday, the fact is --

A.   Yeah, you're trying to establish if I had enough time to come back and challenge this --

Q.   But the truth is, no matter when the hearing is held, you had -- you and Mr. Zamora were doing business with the City while you were commissioners, correct?

A.   That's the truth.  That's the truth.

Q.   And what we're really doing is fighting over whether or not you guys can be removed for that?

A.   Yes.

Q.   Okay.  And you actually put on the agenda an attempt to invoke the same process to remove Commissioner Torres, correct?

A.   What was that again?

Q. You also on the very same agenda, on the meeting that we're here fighting about, there was also an item that you placed on the same agenda under the same section 2.02 to attempt to remove Commissioner Torres, correct?

A. Yes, I was taking action based on the citizens of Port Isabel that demanded action. And this could have been resolved just by a simple explanation by the city attorney. If he was looking after the best interest of our city, it could have been answered easy.

MR. COWEN: Thank you very much. Thank you very much for answering my questions. I'll pass the witness.

THE COURT: You don't get along with the city attorney, sir?

THE WITNESS: We're left -- I mean, honestly, Judge, I mean, there is no trans -- there is no communication between the city manager and city attorney to me or -- I'm not speaking for J. J., but I've asked them to contact me and they don't. They keep everything between these three others, the mayor and the other two commissioners. They get the majority vote, so they can do whatever they think, they want.

MR. HINOJOSA: A couple of questions, Your Honor.

THE COURT: Thank you, sir. Thank you. You may step down.

MR. HINOJOSA: I have a couple of questions for him.

THE COURT: Oh, I'm sorry.

CROSS-EXAMINATION

BY MR. HINOJOSA:

Q. Mr. Cantu, tell the Court what kind of business do you have?

A. It's a -- our business started in the 1940s, a family business. My grandfather started the first taxi company there in Port Isabel called City Taxi. In the 1970s my father started Cantu Auto Repair.

Q. And the auto repair, under whose name is it, the business?

A. My father is deceased and my mother continues the business, Pilar Cantu.

Q. And you work there?

A. And I work there, yes, sir.

Q. And on occasion you've been given vehicles to repair there; is that correct?

A. Correct.

Q. All right. And J. J. Zamora also owns an auto repair business?

A. Yes.

Q.    Okay.   And on occasion he has been given business as well?

A.    Correct.

Q.    Did Memo Torres have a business as well?

A.    Yes, correct, Fast & Fair Car Care.

Q.    What was the name of his business?

A.    Fast & Fair Car Care.

Q.    Did Memo Torres do business with the City of Port Isabel?

A.    Yes.

Q.    Okay.   Compared to the amount of business that you did and the amount of business that Torres did, what is the difference?

MR. PEREZ:   Objection, relevance.

A.    I would estimate 90 percent.

THE COURT:   Overruled.

A.    90 percent that Fast & Fair Car Care --

Q.    (BY MR. HINOJOSA)   So Mr. Torres's business did 90 percent of all the auto repair business with the City of Port Isabel?

A.    Yes.

Q.    Compared to you and Mr. Zamora doing 10 percent; is that correct?

A.    Yes.

Q.    Now, did Mr. Torres -- and he did this business

while he was working for the City, while he was a city commissioner, right?

A. Yes.

Q. Okay. Now, Mr. Torres sold this business, right?

A. Yes.

Q. And you -- and do you understand that he sold his business as a -- on an owner finance basis, right?

MR. COWEN: Objection, if I can take the witness on voir dire to see if he has personal knowledge of that.

Q. (BY MR. HINOJOSA) Well, did Mr. Torres tell you that he sold it?

THE COURT: You'll get to cross-examine.

A. Yeah, he was in the process of selling his business years back, a couple of years back, and it was brought up on EDC -- on the EDC --

Q. (BY MR. HINOJOSA) Answer my question. Did he tell you -- you heard him say that he owner financed it, right?

A. Yes.

Q. Okay. And so since he sold his business on an owner financing basis, does Jr.'s Fast & -- what is it called?

A. Fast & Fair.

Q. Fast & Fair continue to do business with the City of Port Isabel?

A. Oh, yeah, about 100 percent now, 99 percent.

Q. They get 99 percent of the business?

A. Yes, sir.

Q. And they get paid for that?

A. Yes.

Q. And do you understand that that money is used to pay Mr. Memo Torres?

A. Yes, correct.

Q. Now, are you aware of whether or not Commissioner M. J. Garza has ever done business with the City of Port Isabel?

A. Doing business providing service?

Q. Well, no, has she ever leased property from the City of Port Isabel?

A. Yes, in the past -- her husband was a city commissioner, former city commissioner. He's deceased. But he had a lease agreement with the City and now she continues the lease, yes.

Q. All right. And so that lease -- when he died, she became the city commissioner, she replaced him, right?

A. Yes.

Q. So the lease that she has with the City of Port

Isabel was in effect while she was the city commissioner?

A. Correct.

Q. So do you think that when a person leases property from the City of Port Isabel, they're doing business with the City of Port Isabel?

A. Yes, it clearly states in the charter as well, "shall conduct no lease or sales of any city property."

Q. Okay. And --

A. That was another --

Q. And have either one of these individuals ever told you, "Well, I did business and, therefore, I'm forfeiting the position. Nobody can do business"?

A. No.

Q. Did Mr. Collins, as the city attorney, ever tell you at any time -- he was sitting in the meetings when these issues would come up, right?

A. Yes.

Q. And how long has he been the city attorney?

A. For about five years.

Q. And during that period of five years, did Mr. Memo Torres do business with the City of Port Isabel through his Fast & -- what do you call it? I want to say Fast & Furious.

A. Fast & Fair.

Q. Fast & Fair, did he do business, yes?

A. Many times.

Q. A lot?

A. A lot more.

Q. A lot more than you?

A. Over 90 percent.

Q. All right. Did at any point Mr. Collins tell Mr. Memo Torres, "You can't do this. You can't do business with the City of Port Isabel because the city charter provisions don't allow you to do this"?

A. To Guillermo "Memo" Torres?

Q. Yes.

A. No. No.

Q. Did -- during that period of time, did you get some auto repairs from the City of Port Isabel? You said you did, right?

A. Yes.

Q. Did at any point Mr. Collins say, "Hey, commissioner, I just saw in the city charter provisions you can't do business with the City of Port Isabel"? Did he ever tell you that?

A. No.

Q. Okay. J. J. Zamora has done a little bit of business as well, right?

A. Yes.

Q. Again, far less than Memo Torres did?

A. Yes. To the contrary, he mentioned all this is fine. And I already knew, I mean, as long as we disclose and provide to the contrary -- can you hear me? To the contrary, he said as long as you disclose and --

Q. So you all asked him?

A. Yes.

Q. You asked him?

A. Oh, yes.

Q. J. J. Zamora asked him too, right?

A. Yes.

Q. You talked to also the city manager about it, right?

A. Yes.

Q. And he said the exact same thing, as long as you disclose and abstain, right?

A. Yes.

Q. Okay. So no -- you've been there for 20 years, right?

A. Yes.

Q. The city attorney never once told you that if you do business, even if you disclose and abstain, you're going to lose your position as city commissioner?

A. Never.

Q. Let's talk about some property that Mr. Memo

Torres was trying to sell the City of Port Isabel?

MR. PEREZ: Objection, irrelevant, Your Honor.

THE COURT: Overruled.

MR. HINOJOSA: This is very relevant.

THE COURT: I overruled it. Go ahead.

Q. (BY MR. HINOJOSA) Tell the judge what property are we talking about?

A. Okay.

THE WITNESS: You're familiar with Port Isabel, Judge?

THE COURT: Yes, sir.

THE WITNESS: You're familiar with the little drive-through bank that Merchant Marine used to have?

THE COURT: Yes, sir.

THE WITNESS: And straight as you're coming out of the drive-through, there is two pieces of property there. One has always been vacant and the other one there was a little house there. Are you familiar with those?

Q. (BY MR. HINOJOSA) Who owns that property?

A. That -- that property now is the City of Port Isabel.

Q. Who owned it before?

A. Who owned it before? Guillermo "Memo" Torres.

Q. Okay. And when did he sell that property to the City of Port Isabel?

A. The exact date I don't remember, but it's been over a year, probably about two years.

Q. While he's been city commissioner?

A. Yes.

Q. You sit on the Economic Development Corporation for the City of Port Isabel?

A. I was there a term, but then Memo has been there since 1994, I think it is.

Q. You sat on the city commission during that time -- you sat on the EDC during the time you've been a city commissioner, right?

A. Yes, I have.

Q. And were you on there at the time that they considered purchasing this property from Memo Torres for the City of Port Isabel?

A. No, sir.

Q. Were you aware that Memo Torres sat on the city commission?

A. Yes.

Q. Were you aware that he was involved in the negotiations for the purchasing of this property from the -- from him for the City of Port Isabel?

A.   Yes.

Q.   How much was that property purchased for?

A.   I believe 95,000.

Q.   Two lots?

A.   It's one lot.

Q.   One lot?

A.   One lot.

Q.   95,000?

A.   95,000.

Q.   Was Memo Torres in executive session while the city commissioner -- with the EDC while you were discussing this provision -- this purchase of this property?

A.   Yes, I even -- I told our city attorney, said, "This ain't correct.  I mean, he shouldn't be able to negotiate."  He wanted $110,000 for the property.  I told Robert Collins, "He shouldn't even be in here negotiating the price."

Q.   And what did Mr. Collins tell you?

A.   That it was perfectly fine.

Q.   Did Mr. Collins tell you at that time that Memo Torres has problems, because he's doing business with the City of Port Isabel that he's going to forfeit his job at that time?

A.   No.

Q. Did he raise any questions as to whether or not Memo Torres could be doing this?

A. No.

Q. Did you just assume that because the city attorney didn't tell you that this was improper and illegal for him to do this under the city charter provisions, therefore, he could do it?

A. No, based on our workshop, like the judge said, I mean, I know it's illegal when there is an item pertaining -- directly pertaining to you, you need to remove yourself and abstain from any voting.

Q. And that's what you were told?

A. Yes.

Q. At no point were you ever told if -- how much money did you do business -- how much money did you make from the City of Port Isabel in the year 2014?

A. 2014? It was -- I would estimate -- I don't recall, but, I mean, it's less than $15,000.

Q. How much money did Fast & Fair do in 2014?

A. I've requested the 1099s and they haven't supplied me with them. But just based on our billings, every two weeks, I mean, it's --

Q. What do you estimate the amount to be?

A. Over 100,000.

Q. And J. J. Zamora, how much business did he do in

2014?

A. $250, I think.

MR. HINOJOSA: I'll pass the witness.

REDIRECT EXAMINATION

BY MR. COWEN:

Q. You never raised the issue of Mr. Garza or Mr. Torres doing business with the City by bringing an item on -- at a city commission meeting, did you?

A. Bringing an item, no, not me personally.

Q. And you've never moved under Section 2.02, like when you tried to remove Mr. Torres for not paying property taxes, you never filed anything on the agenda to try to remove him for not -- for doing business with the City, did you?

A. Tell me the question again.

Q. You never put something on the agenda under section 2.02 of the charter to try to remove someone else because they did business with the City?

A. No.

Q. As a commissioner, you would have had the power to do that, to put that on the agenda if you wanted to; isn't that correct?

A. Yes, but I would seek legal advice and our city manager's advice as well. And I seek this -- before this I seeked it and I did not get no response from

either one of them, face to face with Ed or I asked Ed to have Robert call me.

Q. And you're aware Robert Collins did not put your removal on the agenda, correct?

A. Correct.

Q. That was done by another commissioner, correct?

A. What was that again?

Q. That was done by another commissioner, not by Mr. Collins, correct?

A. On what item?

Q. The item to remove you.

A. To remove me?

Q. Right.

A. Like I mentioned, as it's customary to turn in everything by noontime on Friday, 5:00 o'clock we get a draft or our actual packet, and I did receive it, and at no time was there anything pertaining to Mr. Torres removing Zamora or Cantu.

Q. But Mr. Torres is the person that put it on, not Mr. Collins, correct?

A. Well, I don't know.

MR. COWEN: May I approach, Your Honor?

THE COURT: Yes.

MR. COWEN: This is already an exhibit and it's already in evidence, Your Honor.

Q. (BY MR. COWEN) This is the notice of the meeting for item No. 4 which talks about potential action to remove commissioners. It has in bold Commissioner Guillermo "Memo" Torres, correct?

A. Okay. Yeah, that's what it says there.

Q. And Mr. Collins did not obviously vote on the matter either, did he?

A. No, but, I mean, in the newspaper it also said what Ed said. It's in the newspaper, the response, the *Longview versus Hunt.* And right on there, "political ad paid for by candidate."

Q. The sale of land that you allege that involved another commissioner, that was done prior to that commissioner being reelected, correct?

A. Tell me the question again.

Q. The sale of property that you were complaining about, that was done prior -- that was done about 2011?

A. But the full question?

Q. The sale of property that you testified about when Mr. Hinojosa was asking you questions, that was a 2011 property sale, correct?

A. Yes.

Q. The seller I think was Torres?

A. Yes.

Q. Mr. Torres has been reelected since then,

correct?

A. I don't know the dates, pero -- I really don't know.

Q. And the sale of -- he's actually up for election in May 9th, correct?

A. Yes.

Q. That means he got elected before in 2013? It's a two-year term?

A. 2011, 2012.

Q. 2011, 2013, 2015, those are the terms, correct?

A. Every two years, yes.

Q. And the sale of the business, whether he's owner financing or not, the sale of the business that Mr. Torres made was also done prior to him being reelected in 2013, correct?

A. I don't know the dates.

Q. You don't know one way or the other, correct?

A. No.

Q. But, moreover, you never brought it to the commission to try to remove any of the other commissioners for having done business with the City, correct?

A. Yeah, no. The only reason I brought it up is because it was posted in the newspaper by concerned citizens and we received certified mail, every

commissioner, and carbon copy to I think the DA and everybody else. That's the reason I brought it up.

Q. And you've never asked the district attorney to remove anyone else due to another commissioner having improper business with the City, have you?

A. No, but, like I mentioned, I went into his office seeking advice.

Q. And you still -- if you believe that someone else is doing something improper, you still have the ability to talk to Mr. Saenz about that and ask him to take action, correct?

A. Yes, si.

MR. COWEN: I'll pass the witness, Your Honor.

MR. PEREZ: Just a couple of questions.

CROSS-EXAMINATION

BY MR. PEREZ:

Q. Mr. Cantu, you mentioned a couple of times this group called Concerned Citizens. What are their names?

A. It's just addressed Concerned Citizens.

Q. You don't know who they are?

A. No, sir.

Q. Under oath you're telling this Court you don't know who these people are?

A. Under oath, yes, sir.

MR. PEREZ: No further questions.

RECROSS-EXAMINATION

BY MR. HINOJOSA:

Q. How much in taxes does Mr. Memo Torres owe the City of Port Isabel?

A. The City of -- overall it's over 28,000. To the City I've calculated over 8,000 or $9,000 to the City of Port Isabel.

Q. Specifically to the City of Port Isabel?

A. Correct.

Q. No -- the property was sold you said before to -- by Memo Torres to the City before his last election. But since the last election --

A. That's what Mr. Cowen elaborated.

Q. Let me ask you this, since the last election has he continued through Fast & Furious -- Fast & Fair to do business -- that's why I keep asking you for that name -- Fast & Fair to do business with the City of Port Isabel since the last election?

A. Since the last election?

Q. Yes.

A. Like I said, I don't -- I don't have the exact dates when he actually sold it, but --

Q. But he still -- you all still approve bills from them, right?

A. Yes.

Q. And it's an owner finance deal, right?

A. And he abstains sometimes. Sometimes he won't abstain. So I don't know what exactly he's getting at.

MR. HINOJOSA: I pass the witness.

FURTHER REDIRECT EXAMINATION

BY MR. COWEN:

Q. When you put the agenda item on the agenda for the meeting to remove Mr. Torres for not having paid taxes, you believed you were doing the right thing, didn't you?

A. It wasn't just on the taxes alone. That's why I met with Ed and I asked him about his recommendation of this item, does he think it's a violation of the city charter. And he said based on the delinquent taxes, yes. On the sale of the property, he justifies it as the City needing additional parking for the civic center. And I asked him, "Do you know of any other indebtedness that he owes to the City?" And he mentioned the trash. And I said, "What about the trash?"

"He owes over $450 on trash."

"So he's delinquent. So based on those violations, do you think he's in violation of the city charter?" And he said yes.

So I asked him, "Have the city attorney contact me before I put something on the action item or the agenda." I never received a response.

Q. But you believed -- you didn't think you were doing anything wrong when you put it on the agenda to remove Mr. Torres, correct?

A. If I was, I would rely on our city council or city attorney to elaborate on that.

Q. Will you agree --

A. And I asked him, I put him on the spot and I asked him and he just stood up and he said, "You can do whatever you want."

Q. But will you agree that you were acting in good faith doing what you thought was right?

A. Correct.

Q. You thought that you had the authority to put that on the agenda and try to have him removed, correct?

A. Well, it was based on the citizens of Port Isabel, the concerned citizens, I was demanded to take action.

Q. And you also didn't think there was any -- you never objected to having that item heard on the Monday meeting saying, "Well, this is not a regular meeting. We can't hear the item to remove Mr. Torres on Monday"?

A. I did. I told Ed, I said, "I know this is all

coming from the city attorney because you're not this smart to be able to be manipulating special meetings back and forth." I said, "I know it's coming from Robert Collins. So we're not going to be able to take action on my item." And, like I said, after that, my agenda item was correct at 5:00. And at 7:30, when I received my packet, there was Torres.

Q. But when the meeting was moved from Tuesday to Monday, you did not remove your item, did you?

A. No, no, it was already submitted.

Q. And you went forward with a vote on your item on that Monday meeting, correct?

A. I went ahead and -- after I seeked legal advice, based on the -- what's the best interest of the City. And he said, "You can do whatever you want." He never answered me. That's what I mean, Judge.

MR. COWEN: I'll pass the witness, Your Honor.

MR. PEREZ: No questions, Your Honor. Thank you.

MR. HINOJOSA: No questions, Your Honor.

THE COURT: Okay. You may step down. Thank you.

THE WITNESS: Thank you, Judge.

THE COURT: Anything else?

# Exhibit B

**PORT ISABEL ECONOMIC DEVELOPMENT CORPORATION MINUTES OF A REGULAR MEETING**

**DATE:**          Wednesday, January 19, 2011

**TIME:**          6:00 P.M.

**PLACE:**         City Commission Chamber Meeting Room
                   305 East Maxan Street
                   Port Isabel, Texas 78578

**MEMBERS PRESENT:** Scott Friedman, Chairman
                   Guillermo "Memo" Torres, Vice chairman
                   Inocente Zurita, Secretary
                   Robin Ochoa, Treasurer
                   Larry Ellis, Board Member
                   Maria de Jesus "M.J." Garza, Board Member
                   Janie Villarreal, EDC Administrator
                   Edward Meza, City Manager
                   Alonzo Echavarria, Finance Director

**MEMBERS ABSENT:** None

**ALSO PRESENT:**  David, Leamon, Petra Reyna, Reyna & associates, Members of the Port Isabel Volunteer Fire Department: Ruben Castillo, Phill Bell, Jarrod, Martinez, David Rivera, Andy Puente, Danny Marchan, Rod Garcia & Joshua Garza

## ORDER OF BUSINESS

### I. CALL TO ORDER

Chairman Scott Friedman called the meeting to order at 6:00 p.m., noting that there was a quorum. For the record Board Member Martin Cantu arrived late.

### II. PLEDGE OF ALLEGIANCE

All: I pledge allegiance to the flag of the United States of America, and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all.

Honor the Texas flag; I pledge allegiance to thee, Texas, one state under God, one and indivisible.

### III. CITIZENS FORUM

There were no citizens in attendance who wished to address the EDC Board.

### IV. CONSENT AGENDA ITEMS

1. **Approval of the Minutes of the Budget Workshop & Regular Meeting - October 20, 2010.**

   Inocente Zurita motioned, second by Guillermo Torres, all voting aye to approve the minutes. Motioned carried.

### V. NEW BUSINESS

1. **Discussion and potential action to approve the renewal of a contract with Petra Reyna of Reyna & Associates for Grant Management Services of the Revolving Loan**

**Program. The renewal is for a six month period (March 2011 – August 2011) at a cost of $15,000. [Janie Villarreal, EDC Administrator/Petra Reyna, Reyna & Associates]**

Petra Reyna with Reyna & Associates manages the revolving loan program; their contact is for a six month period and would have to be renewed with the Board's approval every six month for continuation of grant management services.

Inocente Zurita motioned, second by Commissioner Guillermo Torres, all voting aye to approve. Motioned carried.

2. **Discussion and potential action to approve RESOLUTION 01-19-11-01 A Resolution authorizing the Port Isabel Economic Development Corporation Officials to apply and execute documents related to said application assistance under the rules and regulations of the USDA Intermediary Relending Program. [Janie Villarreal, EDC Administrator/Petra Reyna, Reyna & Associates]**

Petra Reyna addressed the board, letting them know that this would be the second application submitted and the funds would be used to supplement the current fund for the Revolving Loan Program. She also stated that the USDA has changed how funds are allocated and they are now allocated through the state giving us a better chance since we are now only competing state wide; at this time we are the only area in the State of Texas with this type of program. We have an excellent chance of being funded. All we need to do is change the amount being requested from $750,000 to $400,000 since the USDA has set a cap. Ms. Reyna reminded us that this is a loan that we need to pay back to the USDA at 1% interest over a 30 year period, so we need to be careful with how money is loaned.

Scott Friedman asked what the cap of the loan was and what the cap interest rate. Ms. Reyna stated that the cap on the loan would be $150,000 with a 3% - 10% rate being caped at 6% to help cover administrative costs & make enough money to be able to make payments.

Commissioner Maria de Jesus Garza asked originally we were asking for $750,000 and because of the cap we are asking for $400,000 how this would affect the loan process for local businesses. Ms. Reyna said that the $400,000 cap would not have an impact on the local businesses because after the first loan is approved we can go back and ask for additional funding and this is accelerating the process. Ms. Garza asked if we would be asking for $400,000 on the third round and Ms. Reyna said yes and this would help expand the portfolio rapidly.

Ms. Reyna stated that she is going to try different marketing strategies to let the local businesses know that program is available to them.

Scott Friedman stated that it is very important that we get the word out. This could eventually bring business relocations to this area and we are creating this loan program that is very successful for a lot of people and this is the direction to get new businesses to come to this area.

Commissioner Martin Cantu asked how many loans had been awarded. Ms Reyna stated that two loans had been finalized and that the third loan was in the process of going to the loan committee for review and then to the board for approval and this will have obligated all the funds for the grant requirement of the program.

Robin Ochoa stated that with the $400,000 we could only approve 2 applicants. Ms. Reyna said that $150,000 is a cap and that is the maximum amount to be loaned, but the loans can be in smaller amounts.

Commissioner Guillermo Torres motioned, second by Robin Ochoa, all voting aye to approve. Motion Carried.

3. **Discussion and potential action to create a Tax Increment Reinvestment Zone (TIRZ) and financial support for this project. [Janie Villarreal, EDC Administrator/Lance Elliot]**

   Janie Villarreal stated that Mr. Elliot was running late and he asked that his item be moved to the end.

   Commissioner Maria de Jesus Garza motioned, second by Commissioner Guillermo Torres, all voting aye to move item to the end of agenda. Motion carried.

   Mr. Elliot was not able to make it to the meeting. Ms. Reyna read an email from Mr. Elliot explaining what the TIRZ entailed and stated that Mr. Elliot had already given a presentation to the City Commission.

   Commissioner Martin Cantu stated for the record that the City Commission had tabled the item.

   Commissioner Martin Cantu motioned, second by Commissioner Guillermo Torres, all voting aye to table the item until further notice. Motion carried.

4. **Discussion and potential action to approve a funding request in the amount of $15,000 from the Port Isabel Volunteer Fire Department for restoration of the Old Fire Hall. [Janie Villarreal, EDC Administrator/Danny Marchan, Fire Chief]**

   The Port Isabel Volunteer Fire Department Association approached the board requesting funds in the amount of $15,000 to help restore the Old Fire Hall. Ruben Castillo and Phill Bell gave a brief presentation to the board explaining what the funds would be used for.

   Edward Meza stated that the city would be contributing $20,000 from the Capita Improvement Funds to help complete the project.

   Guillermo Torres would like to give an additional $3,500 to build the handicap ramp and would like to the item placed on the next agenda.

   Commissioner Martin Cantu motioned, second by Commissioner Guillermo Torres, all voting aye to approve. Motion carried.

5. **Discussion and potential action to approve change of monthly meetings to quarterly meetings (4 times a year – October, January, April & July). [Janie Villarreal, EDC Administrator/Edward P. Meza, City Manager/EDC Director]**

   City Manager Edward Meza stated that we would like to change from monthly meeting to quarterly meeting to give staff ample time to work on additional items instead of concentrating on putting together meeting packets each month. After a brief discussion the board agreed on holding meeting every two months instead of quarterly, with the option of holding special meeting if the need should arise.

   Commissioner Guillermo Torres motioned, second by Commissioner Maria de Jesus Garza, all voting aye to approve. Motioned carried.

6. **Discussion and potential action to approve EDC Administrator Janie Villarreal to attend the Texas EDC Basic Course in Austin February 14 – 18. [Janie Villarreal, EDC Administrator]**

   Janie Villarreal asked the board for permission to attend a Basic EDC course to gain a better understanding of economic development. The board complemented her on the great job she was a doing and said that by attending this course would be a great idea to help her continue to do her job well.

Robin Ochoa motioned, second by Commissioner Guillermo Torres, all voting aye to approve. Motion carried.

## VI. REPORTS

### 1. Quarterly Reports Service/Project Agreements through December 2010

    A. **WAVE**
    B. **Port Isabel Chamber of Commerce**
    C. **Museums of Port Isabel**
    D. **Marketing – Valerie Bates**
    E. **VIDA**
    F. **Gulf of Mexico Foundation**

Janie Villarreal gave a brief summation on quarterly reports for all entities being funded by PIEDC. The Board would like to continue to see quarterly reports on each project being funded.

### 2. Financial Status Report through December 2010

    A. **Sales Tax**
    Sales tax collected:

| | |
|---|---|
| October 2010 - | $165,911.98 (Net paid to EDC - $34,811.33) |
| November 2010 - | $159,960.93 (Net paid to EDC - $33,323.56) |
| December 2010 - | $116,990.64 (Net paid to EDC - $22,580.99) |
| TOTAL COLLECTED - | $442,863.55 (Net paid to EDC - $90,715.88) |

    B. **Investments**
    Account balance after disbursements as of December 31, 2010 was $1,127,233.00
    Logic Investment balance AS OF December 31, 2010 was $830,195.76
    Interest earned as of December 31, 2010 was $461.87

    C. **Bills Paid**
    Total amount of bills paid for October – December 2010 was $70,432.62

## VII. ADJOURNMENT
Scott Friedman called for a motion to adjourn.

Commissioner Maria de Jesus Garza motioned, second by Commissioner Guillermo Torres, all voting aye to adjourn at 7:00 p.m., motion carried.

Port Isabel Economic Development Corporation

Scott Friedman, Chairman

ATTEST:

Janie Villarreal, EDC Administrator

# Exhibit C

May 14, 2015

RECEIV

MAY 1 2015

Office of the City Secr

Edward P. Meza
City of Port Isabel
305 E Maxan St
Port Isabel TX 78578

Susie Alcocer
City of Port Isabel
305 E Maxan St
Port Isabel TX 78578

*Via Hand Delivery*

Dear Mr. Meza and Ms. Alcocer,

This letter is to call for a special meeting of the City Commission of the City of Port Isabel, for Tuesday, May 19, 2015 at 7:00 pm at the City Hall, pursuant to Section 2.02 of the Port Isabel City Charter.

The following is the agenda for this meeting, and should be posted in the order and form set out here:

1.     Call to Order; Roll Call.

2.     Invocation.

3.     Pledge of Allegiance.

4.     Public Comment/Open Forum

5.     Consideration and possible action to terminate any non-employee contractual relationship for legal services between Robert Collins, or any affiliated entity, and the City of Port Isabel, effective immediately.

6.     Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin Cantu and J.J. Zamora were disqualified from office, and to rescind any action taken to remove them.

7.     Consideration and possible action to rescind approval of the retention of outside counsel to represent the city and members of the city commission in pending and/or threatened litigation, and to rescind approval to pay any fees incurred by outside counsel, effective

May 6, 2015, consistent with a finding under Ordinance Number 364 that the pending and/or contemplated litigation to which members or former members of the city commission may be a party does not arise from actions taken for or on behalf of the city, and further finding that such fees are not reasonable.

8. Consideration and possible action to rescind approval of the retention of outside counsel to investigate and/or prosecute potential violations of the city charter, and other matters.

9. Consideration and possible action to appoint a city attorney.

10. Executive Session; Closed Session

   A. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city attorney, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
   B. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
   C. To deliberate the appointment, employment or duties of an interim city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

11. Open Session

   A. Action relative to executive session.
   B. Action relative to executive session.
   C. Action relative to executive session.

12. Adjourn.

You are hereby directed to post this meeting in conformity with the requirements of the Port Isabel City Charter and the Texas Open Meetings Act, and to distribute notice of this meeting to the members of the City Commission.

Sincerely,


JUAN JOSE "JJ" ZAMORA                MARTIN C. CANTU
City Commissioner, Place 1           City Commissioner, Place 3

# Exhibit D

THE STATE OF TEXAS §
COUNTY OF CAMERON §
CITY OF PORT ISABEL §

## NOTICE OF A SPECIAL MEETING
## OF THE PORT ISABEL CITY COMMISSION

## NOTICE IS HEREBY GIVEN

Pursuant to Chapter 551, Title 5, of the Texas Government Code, the Texas Open Meetings Act, notice is hereby given that the Port Isabel City Commission in accordance with Article II, Section 2.11 of the Charter of said City, will convene a Special Meeting at the City Commission Chambers Meeting Room, located at 305 E Maxan Street, on Tuesday, May 19, 2015 at 7:00 pm for the purpose of discussing the following items:

NOTE: The City Commission of the City of Port Isabel reserves the right to discuss any item in Closed Session whenever authorized under the Texas Open Meetings Act, Chapter 551, of the Texas Government Code. The City Commission may discuss the items on this agenda in any order.

The City of Port Isabel does not discriminate on the basis of disability in the admission of, access to, treatment of, employment in its programs, activities, or public meetings. Any individual with a disability in need of accommodation is encouraged to contact the Office of the City Secretary at 956-943-2682 at least 24 hours prior to the scheduled meeting to make proper arrangements.

ORDER OF BUSINESS

I.      CALL TO ORDER

II.     INVOCATION

III.    PLEDGE OF ALLEGIANCE

IV.     PUBLIC COMMENT/ OPEN FORUM

Please Note:

-Any person with business before the Commission not scheduled on the Agenda as a Public Hearing may speak to the commission.
-Public Comment Forms are located on the table at the entrance of the City Chambers Meeting Room. (For further information, contact the Office of the City Secretary).
-The speaker must state his or her full name before speaking.
-There is a three (3) minute time limit per speaker.
-Public Comment Forms are not accepted after 6:45 pm.
-PowerPoint presentations are not conducted during the public comment period.

V. NEW BUSINESS

1. Consideration and possible action to terminate any non-employee contractual relationship for legal services between Robert Collins, or any affiliated entity, and the City of Port Isabel, effective immediately.

2. Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin C. Cantu and Juan Jose "J.J." Zamora were disqualified from office, and to rescind any action taken to remove them.

3. Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin C. Cantu and Juan Jose "J.J". Zamora were disqualified from office, and to rescind any action taken to remove them.

4. Consideration and possible action to rescind approval of the retention of outside counsel to represent the city and members of the city commission in pending and/or threatened litigation, and to rescind approval to pay any fees incurred by outside counsel, effective May 6, 2015, consistent with a finding under Ordinance Number 364 that the pending and/or contemplated litigation to which members or former members of the city commission may be a party does not arise from actions taken for or on behalf of the city, and further finding that such fees are not reasonable.

5. Consideration and possible action to rescind approval of the retention of outside counsel to investigate and/or prosecute potential violations of the city charter, and other matters.

6. Consideration and possible action to appoint a city attorney.

7. Consideration and possible action to approve Resolution No. 05-19-15-01: A Resolution by the City Commission of Port Isabel, Texas to appoint or re-appoint one (1) member to the Port Isabel Economic Development Corporation Board. (Commissioner Jeffery David Martinez)

VI. EXECUTIVE SESSION; CLOSED SESSION

1. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city attorney, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
2. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
3. To deliberate the appointment, employment or duties of an interim city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

VII. ACTION TAKEN FROM CLOSED SESSION; IF ANY

1. Action relative to executive session.

2.    Action relative to executive session.

3.    Action relative to executive session.

VIII.   ADJOURNMENT OF MEETING

CERTIFICATION

I certify that the above notice of a Special Meeting of the City Commission of the City of Port Isabel, Texas is true and correct; and that I posted such notice on a bulletin board at City Hall, a place convenient and readily accessible to the public on the 16th day of May, 2015 at 8:41 am/pm, in accordance with the Texas Open Meetings Act (Texas Government Code, § 551.041-§551.050).

Nadini P. Jee,
Assistant City Secretary
City of Port Isabel, Texas

CERTIFICATION OF REMOVAL

I certify that the agenda of items to be considered by the City Commission was removed by the City Secretary's Office from the Port Isabel City Hall bulletin board on the _____ day of _____, 2015.


_____
Office of the City Secretary

FILED
2015-DCL-02342
6/1/2015 10:02:55 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
5500790

CAUSE NO. 2015-DCL-02342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. AND | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| VS. | § | CAMERON COUNTY, T E X A S |
| | § | |
| CITY OF PORT ISABEL, TEXAS; | § | |
| MARIA de JESUS GARZA, | § | |
| GUILLERMO TORRES, JOE E. VEGA, | § | |
| and KEN PAXTON, THE ATTORNEY | § | |
| GENERAL OF TEXAS | § | |
| Defendants. | § | 444th JUDICIAL DISTRICT |

## DEFENDANTS' AMENDED MOTION TO RECONSIDER PLAINTIFFS' MOTION TO REINSTATE AND TO DENY REINSTATEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant City of Port Isabel, Texas ("City"), and files this Defendants' Motion to Reconsider Plaintiffs' Motion to Reinstate and to Deny Reinstatement, and would respectfully show unto the court as follows:

### I.

1.      This motion is amended merely for the purpose of clarifying the exhibits. Exhibit B to the original motion was not the correct meeting date. Exhibit B attached to this Amended Motion is correct and reflects the meeting minutes referenced by Mr. Cantu's testimony. See Below.

### II.

2.      This Court heard Plaintiffs' Application for Temporary Injunction on April 24, 2015, and indicated that an Order would be granted to Plaintiffs. At the conclusion of that hearing, this Court signed an Order denying all Pleas to the Jurisdiction. No Temporary Injunction Order was signed. Plaintiff Martin Cantu committed demonstrable perjury in his

1

testimony given at that hearing. (See Exhibit A — testimony excerpt of Martin Cantu). Cantu's perjury relates to his testimony about a fictional EDC (Economic Development Corporation) meeting he described in great detail. By his false testimony to this Court, Cantu claimed that he was at that EDC meeting and that he participated in a closed door Executive Session during the EDC meeting. Cantu also testified that the Port Isabel City Attorney attended that EDC meeting and, according to Cantu's sworn testimony, the City Attorney is alleged to have made certain representations about the actions of Guillermo Torres alleged by Cantu to have been carried out in that EDC Executive Session. Cantu testified that Torres attended that EDC Executive Session meeting and that Torres argued in favor of a loan in that EDC Executive Session that would have benefitted Torres. Cantu attempted to claim that Torres had committed a crime by this action. Cantu testified under oath and in open court to these alleged "facts" in his corrupt effort to persuade this Court that he had been somehow wronged when he was removed from the Port Isabel City Commission for his own illegal activities.

3. Cantu lied under oath and committed perjury. There was no such Executive Session in that meeting of the Port Isabel EDC. (See Exhibit B attached — Minutes of the EDC meeting described by Cantu, demonstrating that Cantu was not present, the City Attorney was not present, there was NO Executive Session at all, and Torres abstained on the vote of the relevant item, which proves irrefutably that Cantu committed perjury.) At the conclusion of that Temporary Injunction hearing, the Court signed an Order denying all Pleas to the Jurisdiction. No Temporary Injunction Order was signed, although the Court did state that he would sign one.

4. On May 12, 2015, at 11:04 a.m., the City appealed the Order Denying the Pleas to Jurisdiction, which automatically stayed any further action by the District Court. CP&RC Sec. 51.014(b). Notice of that filing and resulting Stay was delivered to Plaintiffs' counsel by

2

eservice contemporaneously with the e-filing at 11:04 a.m. on May 12. Defendant Torres filed a pleading giving further notice of the Stay on May 12 at 3:52 p.m. As of that time, and indeed to this date, there is no evidence of any Temporary Injunction Order having been signed on the Court's docket.

5. On Tuesday, May 12, at a City Commission meeting, counsel for Plaintiff gave City Manager Edward Meza what appeared to be a copy of a signed Temporary Injunction Order. That purported Temporary Injunction Order revealed that it had been faxed to Plaintiff's counsel from the clerk at 3:51 p.m. on May 12. Again, there is no evidence of that signed Temporary Injunction Order on the Court's official docket.

6. Plaintiffs posted Notice on Friday, May 15 that they would hold a Special Meeting of the City Commission of Port Isabel, and, claiming rights purportedly granted by the Temporary Injunction, that they planned to remove the City Attorney and replace counsel for the City, remove the City Manager and engage in replacement of the City Manager. See Exhibit C. Plaintiffs later claimed that the City Manager had already been replaced, by a known associate of Plaintiffs' counsel, Jared Hockema.

7. In response to this, and to preserve the jurisdiction of the appellate Courts, Defendant Torres' counsel contacted Plaintiffs' counsel the afternoon of Friday, May 15, 2015, to advise that in accordance with the notice requirements of the TRAP, an Emergency Motion for Stay of the Temporary Injunction would be presented to the Court of Appeals on Monday, May 18.

8. Plaintiffs' counsel responded by filing Notice of Nonsuit of the entire underlying case, this cause of action and all Orders previously signed, thereby attempting to deprive the appellate courts of any jurisdiction to prevent the coup planned by Plaintiffs' counsel to take

3

over and dismiss the defense of this lawsuit, deprive the City of independent counsel, place his known associate, Jared Hockema. as the City Manager and likely name himself or another of his known associates as City Attorney.

9.  Once Plaintiffs learned of their lawyer's dismissal of the case and the fact that they were no longer subject of the Temporary Injunction Order that changed the status quo and allowed them to purport to control votes on the City Commission, Plaintiffs then demanded, on Saturday, May 16, 2015, that City employees open the locked doors to City Hall; they physically seized and occupied City Hall; they brought Jared Hockema to City Hall and pronounced to the Police Chief and other City employees that Mr. Hockema had been selected by them and City Commissioner Jeffrey Martinez to be the new City Manager of Port Isabel (in apparent direct violation by Plaintiffs and Jeffrey Martinez of the Texas Open Meetings Act, assuming Plaintiffs are lawful members of the City Commission); they compelled City employees to prepare and post Notice of a Special Meeting.   See Exhibit D. They demanded that the Police Chief and Police Captain of Port Isabel issue some kind of "Restraining Order" prohibiting the actual City Manager from entering City Hall; and they demanded that the Police Chief go to the City Manager's home and seize his keys to City buildings.

10.  Having thwarted the jurisdiction of the appellate courts by their nonsuit dismissal of this case and to further their attempts to carry out their unlawful coup and takeover of the City, Plaintiffs then sought to reinstate the case. Plaintiffs filed a motion to reinstate and, in an ex parte manner without notice or opportunity for Defendants to be heard, Plaintiffs obtained a signed order withdrawing the nonsuit and reinstating their case.   Plaintiffs now attempt to claim the Temporary Injunction Order vacated by their non-suit as a basis for them to publicly vote as a majority (even though they have already announced their decision to hire Jared Hockema and

4

fire the current City Manager in violation of the Open Meetings Act); and to complete their takeover of the City government and their intended dismissal of the City's defenses to this action.

11. Plaintiffs voluntarily dismissed this case to deprive Defendants of redress through the appellate courts, and specifically to avoid Emergency Orders by the appellate courts that would stay the attempt to use the change of status quo effected by the purported Temporary Injunction to forever deny any review of their actions. This Court should go no further in granting extraordinary relief to these Plaintiffs. The Motion to Reinstate should be denied.

PRAYER

Accordingly, the Defendant City of Port Isabel respectfully requests that the Court, after proper and adequate notice and a public hearing in accordance with the TRCP, which is hereby requested, reconsider Plaintiffs' Motion to Reinstate and Deny the Motion to Reinstate so that justice may be done, and so that this Court's discretion will not be used to deny appellate review.

Respectfully submitted,

ROBERT L. COLLINS & ASSOCIATES

Robert L. Collins
Texas Bar No. 04618100
Audrey Guthrie
Texas Bar No. 24083116
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467-8883 Facsimile
houstonlaw2@aol.com

ATTORNEYS FOR CITY OF
PORT ISABEL

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion in Opposition to Request for Reinstatement was sent to the following on the 1st day of June, 2015 via certified mail, return receipt requested, hand delivery, e-service and/or facsimile.

Mr. Gilbert Hinojosa
Law Office of Gilberto Hinojosa & Associates, PC
622 East St. Charles Street
Brownsville, TX 78520
Facsimile 956-544-1335
ghinojosa@ghinojosalaw.net

Michael R. Cowen
THE COWEN LAW GROUP
62 E. Price Road
Brownsville, TX 78521
(956) 504-3674 Facsimile
michael@cowenlaw.com

Frank E. Perez
FRANK E. PEREZ & ASSOCIATES, PC
300 Mexico Boulevard
Brownsville, TX 78520
 (956) 504-5991 Facsimile
fperez@feperezandassociates.com


_____
ROBERT L. COLLINS

6

FILED
2015-DCL-02342
6/1/2015 10:02:55 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
5500790

# Exhibit A

it is you.

THE COURT: Wow. Okay. Anybody want to -- wish to present evidence?

MR. PEREZ: I'm sorry, what was the question, Your Honor?

THE COURT: Any side wish to present evidence?

MR. PEREZ: Well, I agree with the statement that --

MR. COWEN: I'll call Martin Cantu, Your Honor.

THE COURT: Okay.

MR. COWEN: It will be very brief.

THE COURT: Raise your right hand, sir.

(Witness duly sworn)

MARTIN C. CANTU, having been first duly sworn, was called as a witness and testified as follows:

DIRECT EXAMINATION

BY MR. COWEN:

Q. You're Martin Cantu, correct?

A. Yes, sir.

Q. And you were elected last election as a city commissioner in Port Isabel, correct?

A. Yes, sir.

Q. There was a meeting on April 13th, 2015, correct?

A. Yes.

Q. You attended that meeting?

A. Yes.

Q. And Juan Jose Zamora also attended that meeting, correct?

A. Yes.

Q. You had notice that meeting was going to occur, correct?

A. I got notice at 4:59. I got a draft through fax. And I've got documents to show it. But, yes, there was a meeting going on and three of my items on the agenda were posted correctly, correct. But Mr. Guillermo Torres wasn't on that.

Q. You were planning on having the meeting the next day, correct? You were planning on having the meeting the next day, correct, on the 14th?

A. It's customary that on Fridays we turn in, by noontime on Fridays -- everyone that has an action item or anything for the agenda, we have to submit it by Friday noon. By Friday afternoon, we get our packet. This time I got a draft at 5:00 p.m. By 5:30, 6:00 o'clock at the latest, we get our packet.

At 6:30 that same afternoon, I got a call

from Ed, our city manager, that there was another item placed on the agenda similar to mine, but Memo Torres was placing an item to remove Commissioners Zamora and Commissioner Cantu.

Q. And you got that on Friday at about 6:30?

A. Yes.

Q. Okay.

A. I got a phone call.

Q. But you had knowledge --

A. At 6:30.

Q. So you had knowledge prior to the meeting that this was going to come up, correct?

A. I got my packet 7:30, was left at my house.

Q. On Friday?

A. On Friday, yes.

Q. And the meeting was Monday, correct?

A. Yes, special meeting, because our regular scheduled meetings are on Tuesdays and they also put it on the agenda, special meeting.

Q. But all they did was move the Tuesday meeting to Monday, correct?

A. I don't know for what reasons. I mean, they never do. It's always scheduled meetings Tuesdays, second and fourth Tuesday. It's in the ordinance.

Q. But you were still able to attend, right?

A.   Our regular scheduled meetings.

Q.   You were still able to attend the meeting, correct?

A.   Yes.

Q.   And Mr. Zamora was still able to attend the meeting, correct?

A.   Yes.

Q.   And with respect to the question of whether or not you did business with the City of Port Isabel, did moving the meeting from Tuesday to Monday prevent you from presenting evidence that you did not do business with the City of Port Isabel?

A.   Well, I took action on Monday morning and visited the district attorney's office with the chief investigator there and another individual, another investigator.  I told them what was going on, I provided documents also, and I showed them both agenda items, two different ones at 5:00, they were real interested and they made copies.

     And we voiced out our concerns as to based on by certified mail that we received -- the city commission received by certified mail concerned citizens on several violations that Commissioner Torres had with the city charter.

     On the bottom -- on the bottom of the

paragraph, the last paragraph, it clearly stated that if we continue and not take action on this item, we too would be removed from office on a recall, okay? Let me finish. On -- I visited with Ed Mesa on Friday before our agenda packets -- I mean, before our agenda items. It's customary, like I said, by Friday at noon.

So on Friday morning I visited with Ed and I asked, I said, "What is your recommendation towards these violations towards Mr. Memo Torres?" He couldn't answer. He said, "I can't answer. I'm not the city attorney."

I said, "Are you sure? You visited our city attorney. What is his comment or recommendation to this matter?" And he didn't comment.

I said, "Ed, you haven't spoken to him?"

"Yes."

"Well, I need a response from him. Have him call me, have him call me before 12:00 noon so I can discuss this matter so we can remedy this." And I said again, "But you've spoken to him, so what is his comment to you? Or what is going to be his recommendation or his answer to us," I asked Ed.

And he said, "He's already responded. It's in the press."

I said, "What?" And I had him -- I was

CORINNA N. GARCIA, CSR

recording the conversation because he's lied in numerous times to me and I said, "You're talking about this, the Court of appeals, *Longview versus Hunt*? I thought this was Memo's ad, because right after that it's stamped the appraisal district where they can't foreclose on his property. In August 2014 they stamped that, that they can't foreclose on his property because he's over 65. I thought that was all -- so you're telling me our city attorney paid for this ad and that's his response from him to us?"

He said, "Yes. Yes."

I said, "Have him call me, please. Have him call me."

I mean, and I asked that -- furthermore, I asked, "Ed, do you think this commissioner is in direct violation of the city charter? Put on your pants." That's what I told him, "Put on your pants as the city manager and you address this issue with me." I said --

MR. HINOJOSA: Your Honor, I think his response is going way beyond the --

MR. COWEN: I just didn't want to be rude and interrupt him, Your Honor.

THE COURT: Do you have any other questions?

MR. COWEN: Yes, I do. I just didn't want

CORINNA N. GARCIA, CSR

to be rude to the witness and interrupt him while he was speaking.

Q. (BY MR. COWEN) And, sir, the fact is you were doing business with the City, correct?

A. I never -- going back to the meeting, I never got a response. And I put it on the table back to our city attorney, I said, "Based on what I have for action for tonight" -- I gave my report -- I gave my report before the meeting. When the meeting started I gave my report because all commissioners give a report, and I gave my report just what I elaborate. Furthermore, when we were to take action on our first item, which was mine, I seeked legal advice.

I said, "Looking after the best interest of the City, what's your recommendation on this matter?"

He stands up and says, "It's your item. You deal with it."

Again, I asked him, "On behalf of the City, what is the" -- and I was looking for an answer, for him to say, "You know what, all this is unconstitutional" or "You can't take action. We have to go through this other" -- more or less we knew, but I had to respond to the citizens of Port Isabel.

It was a full crowd, people outside also. I had to take my actions to keep them from removing me,

the citizens, the people that voted me in.

Q. Okay. And then with all due respect, sir, my question was a little different than your answer. And I understand that this is emotional and I'm not going to interrupt you.

A. Oh, no, going back to your question -- yes, I'm familiar with it. Like I said, I went to the DA's office and told them -- and I clearly showed them, I mean, I think this is just clear retaliation. I submitted -- I submitted my items at 5:00 o'clock. They were posted. I received a draft, and at 6:30 I get a phone call. At 7:30 I get the actual agenda. So, I mean, it's clear retaliation.

And they were real interested, because after I left there, they came straight knocking on Ed's door at city hall.

Furthermore, I consulted with my attorney and I asked him, "Should we file a TRO?"

MR. COWEN: There might be some attorney-client privilege. I don't want him to waive it accidently.

MR. HINOJOSA: I'm asking him not to.

Q. (BY MR. COWEN) Sir, my question is -- and I understand you don't like --

A. I want the truth. That's what we're here for.

Q. Did you do business with the City of Port Isabel while you were a commissioner?

A. Yes, I have, along with Commissioner Zamora and Guillermo Torres, and it's been addressed with the city manager and city attorney. And I've been there for 20 years and I've heard it before, as long as we disclose it and we abstain from voting on that line item. And I think we've also got some testimony to that, another witness. Manuel De la Rosa also was inquiring on it a year ago.

Q. But whether you had the hearing on Monday or Tuesday, the fact is --

A. Yeah, you're trying to establish if I had enough time to come back and challenge this --

Q. But the truth is, no matter when the hearing is held, you had -- you and Mr. Zamora were doing business with the City while you were commissioners, correct?

A. That's the truth. That's the truth.

Q. And what we're really doing is fighting over whether or not you guys can be removed for that?

A. Yes.

Q. Okay. And you actually put on the agenda an attempt to invoke the same process to remove Commissioner Torres, correct?

A. What was that again?

Q. You also on the very same agenda, on the meeting that we're here fighting about, there was also an item that you placed on the same agenda under the same section 2.02 to attempt to remove Commissioner Torres, correct?

A. Yes, I was taking action based on the citizens of Port Isabel that demanded action. And this could have been resolved just by a simple explanation by the city attorney. If he was looking after the best interest of our city, it could have been answered easy.

MR. COWEN: Thank you very much. Thank you very much for answering my questions. I'll pass the witness.

THE COURT: You don't get along with the city attorney, sir?

THE WITNESS: We're left -- I mean, honestly, Judge, I mean, there is no trans -- there is no communication between the city manager and city attorney to me or -- I'm not speaking for J. J., but I've asked them to contact me and they don't. They keep everything between these three others, the mayor and the other two commissioners. They get the majority vote, so they can do whatever they think, they want.

MR. HINOJOSA: A couple of questions, Your Honor.

THE COURT: Thank you, sir. Thank you. You may step down.

MR. HINOJOSA: I have a couple of questions for him.

THE COURT: Oh, I'm sorry.

CROSS-EXAMINATION

BY MR. HINOJOSA:

Q. Mr. Cantu, tell the Court what kind of business do you have?

A. It's a -- our business started in the 1940s, a family business. My grandfather started the first taxi company there in Port Isabel called City Taxi. In the 1970s my father started Cantu Auto Repair.

Q. And the auto repair, under whose name is it, the business?

A. My father is deceased and my mother continues the business, Pilar Cantu.

Q. And you work there?

A. And I work there, yes, sir.

Q. And on occasion you've been given vehicles to repair there; is that correct?

A. Correct.

Q. All right. And J. J. Zamora also owns an auto repair business?

A. Yes.

Q. Okay. And on occasion he has been given business as well?

A. Correct.

Q. Did Memo Torres have a business as well?

A. Yes, correct, Fast & Fair Car Care.

Q. What was the name of his business?

A. Fast & Fair Car Care.

Q. Did Memo Torres do business with the City of Port Isabel?

A. Yes.

Q. Okay. Compared to the amount of business that you did and the amount of business that Torres did, what is the difference?

MR. PEREZ: Objection, relevance.

A. I would estimate 90 percent.

THE COURT: Overruled.

A. 90 percent that Fast & Fair Car Care --

Q. (BY MR. HINOJOSA) So Mr. Torres's business did 90 percent of all the auto repair business with the City of Port Isabel?

A. Yes.

Q. Compared to you and Mr. Zamora doing 10 percent; is that correct?

A. Yes.

Q. Now, did Mr. Torres -- and he did this business

while he was working for the City, while he was a city commissioner, right?

A. Yes.

Q. Okay. Now, Mr. Torres sold this business, right?

A. Yes.

Q. And you -- and do you understand that he sold his business as a -- on an owner finance basis, right?

MR. COWEN: Objection, if I can take the witness on voir dire to see if he has personal knowledge of that.

Q. (BY MR. HINOJOSA) Well, did Mr. Torres tell you that he sold it?

THE COURT: You'll get to cross-examine.

A. Yeah, he was in the process of selling his business years back, a couple of years back, and it was brought up on EDC -- on the EDC --

Q. (BY MR. HINOJOSA) Answer my question. Did he tell you -- you heard him say that he owner financed it, right?

A. Yes.

Q. Okay. And so since he sold his business on an owner financing basis, does Jr.'s Fast & -- what is it called?

A. Fast & Fair.

Q. Fast & Fair continue to do business with the City of Port Isabel?

A. Oh, yeah, about 100 percent now, 99 percent.

Q. They get 99 percent of the business?

A. Yes, sir.

Q. And they get paid for that?

A. Yes.

Q. And do you understand that that money is used to pay Mr. Memo Torres?

A. Yes, correct.

Q. Now, are you aware of whether or not Commissioner M. J. Garza has ever done business with the City of Port Isabel?

A. Doing business providing service?

Q. Well, no, has she ever leased property from the City of Port Isabel?

A. Yes, in the past -- her husband was a city commissioner, former city commissioner. He's deceased. But he had a lease agreement with the City and now she continues the lease, yes.

Q. All right. And so that lease -- when he died, she became the city commissioner, she replaced him, right?

A. Yes.

Q. So the lease that she has with the City of Port

Isabel was in effect while she was the city commissioner?

A. Correct.

Q. So do you think that when a person leases property from the City of Port Isabel, they're doing business with the City of Port Isabel?

A. Yes, it clearly states in the charter as well, "shall conduct no lease or sales of any city property."

Q. Okay. And --

A. That was another --

Q. And have either one of these individuals ever told you, "Well, I did business and, therefore, I'm forfeiting the position. Nobody can do business"?

A. No.

Q. Did Mr. Collins, as the city attorney, ever tell you at any time -- he was sitting in the meetings when these issues would come up, right?

A. Yes.

Q. And how long has he been the city attorney?

A. For about five years.

Q. And during that period of five years, did Mr. Memo Torres do business with the City of Port Isabel through his Fast & -- what do you call it? I want to say Fast & Furious.

A. Fast & Fair.

Q. Fast & Fair, did he do business, yes?

A. Many times.

Q. A lot?

A. A lot more.

Q. A lot more than you?

A. Over 90 percent.

Q. All right. Did at any point Mr. Collins tell Mr. Memo Torres, "You can't do this. You can't do business with the City of Port Isabel because the city charter provisions don't allow you to do this"?

A. To Guillermo "Memo" Torres?

Q. Yes.

A. No. No.

Q. Did -- during that period of time, did you get some auto repairs from the City of Port Isabel? You said you did, right?

A. Yes.

Q. Did at any point Mr. Collins say, "Hey, commissioner, I just saw in the city charter provisions you can't do business with the City of Port Isabel"? Did he ever tell you that?

A. No.

Q. Okay. J. J. Zamora has done a little bit of business as well, right?

A. Yes.

Q. Again, far less than Memo Torres did?

A. Yes. To the contrary, he mentioned all this is fine. And I already knew, I mean, as long as we disclose and provide to the contrary -- can you hear me? To the contrary, he said as long as you disclose and --

Q. So you all asked him?

A. Yes.

Q. You asked him?

A. Oh, yes.

Q. J. J. Zamora asked him too, right?

A. Yes.

Q. You talked to also the city manager about it, right?

A. Yes.

Q. And he said the exact same thing, as long as you disclose and abstain, right?

A. Yes.

Q. Okay. So no -- you've been there for 20 years, right?

A. Yes.

Q. The city attorney never once told you that if you do business, even if you disclose and abstain, you're going to lose your position as city commissioner?

A. Never.

Q. Let's talk about some property that Mr. Memo

Torres was trying to sell the City of Port Isabel?

MR. PEREZ: Objection, irrelevant, Your Honor.

THE COURT: Overruled.

MR. HINOJOSA: This is very relevant.

THE COURT: I overruled it. Go ahead.

Q. (BY MR. HINOJOSA) Tell the judge what property are we talking about?

A. Okay.

THE WITNESS: You're familiar with Port Isabel, Judge?

THE COURT: Yes, sir.

THE WITNESS: You're familiar with the little drive-through bank that Merchant Marine used to have?

THE COURT: Yes, sir.

THE WITNESS: And straight as you're coming out of the drive-through, there is two pieces of property there. One has always been vacant and the other one there was a little house there. Are you familiar with those?

Q. (BY MR. HINOJOSA) Who owns that property?

A. That -- that property now is the City of Port Isabel.

Q. Who owned it before?

CORINNA N. GARCIA, CSR

A. Who owned it before? Guillermo "Memo" Torres.

Q. Okay. And when did he sell that property to the City of Port Isabel?

A. The exact date I don't remember, but it's been over a year, probably about two years.

Q. While he's been city commissioner?

A. Yes.

Q. You sit on the Economic Development Corporation for the City of Port Isabel?

A. I was there a term, but then Memo has been there since 1994, I think it is.

Q. You sat on the city commission during that time -- you sat on the EDC during the time you've been a city commissioner, right?

A. Yes, I have.

Q. And were you on there at the time that they considered purchasing this property from Memo Torres for the City of Port Isabel?

A. No, sir.

Q. Were you aware that Memo Torres sat on the city commission?

A. Yes.

Q. Were you aware that he was involved in the negotiations for the purchasing of this property from the -- from him for the City of Port Isabel?

A. Yes.

Q. How much was that property purchased for?

A. I believe 95,000.

Q. Two lots?

A. It's one lot.

Q. One lot?

A. One lot.

Q. 95,000?

A. 95,000.

Q. Was Memo Torres in executive session while the city commissioner -- with the EDC while you were discussing this provision -- this purchase of this property?

A. Yes, I even -- I told our city attorney, said, "This ain't correct. I mean, he shouldn't be able to negotiate." He wanted $110,000 for the property. I told Robert Collins, "He shouldn't even be in here negotiating the price."

Q. And what did Mr. Collins tell you?

A. That it was perfectly fine.

Q. Did Mr. Collins tell you at that time that Memo Torres has problems, because he's doing business with the City of Port Isabel that he's going to forfeit his job at that time?

A. No.

CORINNA N. GARCIA, CSR

Q. Did he raise any questions as to whether or not Memo Torres could be doing this?

A. No.

Q. Did you just assume that because the city attorney didn't tell you that this was improper and illegal for him to do this under the city charter provisions, therefore, he could do it?

A. No, based on our workshop, like the judge said, I mean, I know it's illegal when there is an item pertaining -- directly pertaining to you, you need to remove yourself and abstain from any voting.

Q. And that's what you were told?

A. Yes.

Q. At no point were you ever told if -- how much money did you do business -- how much money did you make from the City of Port Isabel in the year 2014?

A. 2014? It was -- I would estimate -- I don't recall, but, I mean, it's less than $15,000.

Q. How much money did Fast & Fair do in 2014?

A. I've requested the 1099s and they haven't supplied me with them. But just based on our billings, every two weeks, I mean, it's --

Q. What do you estimate the amount to be?

A. Over 100,000.

Q. And J. J. Zamora, how much business did he do in

2014?

A.   $250, I think.

MR. HINOJOSA:  I'll pass the witness.

REDIRECT EXAMINATION

BY MR. COWEN:

Q.   You never raised the issue of Mr. Garza or Mr. Torres doing business with the City by bringing an item on -- at a city commission meeting, did you?

A.   Bringing an item, no, not me personally.

Q.   And you've never moved under Section 2.02, like when you tried to remove Mr. Torres for not paying property taxes, you never filed anything on the agenda to try to remove him for not -- for doing business with the City, did you?

A.   Tell me the question again.

Q.   You never put something on the agenda under section 2.02 of the charter to try to remove someone else because they did business with the City?

A.   No.

Q.   As a commissioner, you would have had the power to do that, to put that on the agenda if you wanted to; isn't that correct?

A.   Yes, but I would seek legal advice and our city manager's advice as well.  And I seek this -- before this I seeked it and I did not get no response from

either one of them, face to face with Ed or I asked Ed to have Robert call me.

Q. And you're aware Robert Collins did not put your removal on the agenda, correct?

A. Correct.

Q. That was done by another commissioner, correct?

A. What was that again?

Q. That was done by another commissioner, not by Mr. Collins, correct?

A. On what item?

Q. The item to remove you.

A. To remove me?

Q. Right.

A. Like I mentioned, as it's customary to turn in everything by noontime on Friday, 5:00 o'clock we get a draft or our actual packet, and I did receive it, and at no time was there anything pertaining to Mr. Torres removing Zamora or Cantu.

Q. But Mr. Torres is the person that put it on, not Mr. Collins, correct?

A. Well, I don't know.

MR. COWEN: May I approach, Your Honor?

THE COURT: Yes.

MR. COWEN: This is already an exhibit and it's already in evidence, Your Honor.

CORINNA N. GARCIA, CSR

Q. (BY MR. COWEN) This is the notice of the meeting for item No. 4 which talks about potential action to remove commissioners. It has in bold Commissioner Guillermo "Memo" Torres, correct?

A. Okay. Yeah, that's what it says there.

Q. And Mr. Collins did not obviously vote on the matter either, did he?

A. No, but, I mean, in the newspaper it also said what Ed said. It's in the newspaper, the response, the *Longview versus Hunt*. And right on there, "political ad paid for by candidate."

Q. The sale of land that you allege that involved another commissioner, that was done prior to that commissioner being reelected, correct?

A. Tell me the question again.

Q. The sale of property that you were complaining about, that was done prior -- that was done about 2011?

A. But the full question?

Q. The sale of property that you testified about when Mr. Hinojosa was asking you questions, that was a 2011 property sale, correct?

A. Yes.

Q. The seller I think was Torres?

A. Yes.

Q. Mr. Torres has been reelected since then,

correct?

A. I don't know the dates, pero -- I really don't know.

Q. And the sale of -- he's actually up for election in May 9th, correct?

A. Yes.

Q. That means he got elected before in 2013? It's a two-year term?

A. 2011, 2012.

Q. 2011, 2013, 2015, those are the terms, correct?

A. Every two years, yes.

Q. And the sale of the business, whether he's owner financing or not, the sale of the business that Mr. Torres made was also done prior to him being reelected in 2013, correct?

A. I don't know the dates.

Q. You don't know one way or the other, correct?

A. No.

Q. But, moreover, you never brought it to the commission to try to remove any of the other commissioners for having done business with the City, correct?

A. Yeah, no. The only reason I brought it up is because it was posted in the newspaper by concerned citizens and we received certified mail, every

commissioner, and carbon copy to I think the DA and everybody else. That's the reason I brought it up.

Q. And you've never asked the district attorney to remove anyone else due to another commissioner having improper business with the City, have you?

A. No, but, like I mentioned, I went into his office seeking advice.

Q. And you still -- if you believe that someone else is doing something improper, you still have the ability to talk to Mr. Saenz about that and ask him to take action, correct?

A. Yes, si.

MR. COWEN: I'll pass the witness, Your Honor.

MR. PEREZ: Just a couple of questions.

CROSS-EXAMINATION

BY MR. PEREZ:

Q. Mr. Cantu, you mentioned a couple of times this group called Concerned Citizens. What are their names?

A. It's just addressed Concerned Citizens.

Q. You don't know who they are?

A. No, sir.

Q. Under oath you're telling this Court you don't know who these people are?

A. Under oath, yes, sir.

MR. PEREZ: No further questions.

RECROSS-EXAMINATION

BY MR. HINOJOSA:

Q. How much in taxes does Mr. Memo Torres owe the City of Port Isabel?

A. The City of -- overall it's over 28,000. To the City I've calculated over 8,000 or $9,000 to the City of Port Isabel.

Q. Specifically to the City of Port Isabel?

A. Correct.

Q. No -- the property was sold you said before to -- by Memo Torres to the City before his last election. But since the last election --

A. That's what Mr. Cowen elaborated.

Q. Let me ask you this, since the last election has he continued through Fast & Furious -- Fast & Fair to do business -- that's why I keep asking you for that name -- Fast & Fair to do business with the City of Port Isabel since the last election?

A. Since the last election?

Q. Yes.

A. Like I said, I don't -- I don't have the exact dates when he actually sold it, but --

Q. But he still -- you all still approve bills from them, right?

A. Yes.

Q. And it's an owner finance deal, right?

A. And he abstains sometimes. Sometimes he won't abstain. So I don't know what exactly he's getting at.

MR. HINOJOSA: I pass the witness.

FURTHER REDIRECT EXAMINATION

BY MR. COWEN:

Q. When you put the agenda item on the agenda for the meeting to remove Mr. Torres for not having paid taxes, you believed you were doing the right thing, didn't you?

A. It wasn't just on the taxes alone. That's why I met with Ed and I asked him about his recommendation of this item, does he think it's a violation of the city charter. And he said based on the delinquent taxes, yes. On the sale of the property, he justifies it as the City needing additional parking for the civic center. And I asked him, "Do you know of any other indebtedness that he owes to the City?" And he mentioned the trash. And I said, "What about the trash?"

"He owes over $450 on trash."

"So he's delinquent. So based on those violations, do you think he's in violation of the city charter?" And he said yes.

So I asked him, "Have the city attorney contact me before I put something on the action item or the agenda." I never received a response.

Q. But you believed -- you didn't think you were doing anything wrong when you put it on the agenda to remove Mr. Torres, correct?

A. If I was, I would rely on our city council or city attorney to elaborate on that.

Q. Will you agree --

A. And I asked him, I put him on the spot and I asked him and he just stood up and he said, "You can do whatever you want."

Q. But will you agree that you were acting in good faith doing what you thought was right?

A. Correct.

Q. You thought that you had the authority to put that on the agenda and try to have him removed, correct?

A. Well, it was based on the citizens of Port Isabel, the concerned citizens, I was demanded to take action.

Q. And you also didn't think there was any -- you never objected to having that item heard on the Monday meeting saying, "Well, this is not a regular meeting. We can't hear the item to remove Mr. Torres on Monday"?

A. I did. I told Ed, I said, "I know this is all

coming from the city attorney because you're not this smart to be able to be manipulating special meetings back and forth." I said, "I know it's coming from Robert Collins. So we're not going to be able to take action on my item." And, like I said, after that, my agenda item was correct at 5:00. And at 7:30, when I received my packet, there was Torres.

Q. But when the meeting was moved from Tuesday to Monday, you did not remove your item, did you?

A. No, no, it was already submitted.

Q. And you went forward with a vote on your item on that Monday meeting, correct?

A. I went ahead and -- after I seeked legal advice, based on the -- what's the best interest of the City. And he said, "You can do whatever you want." He never answered me. That's what I mean, Judge.

MR. COWEN: I'll pass the witness, Your Honor.

MR. PEREZ: No questions, Your Honor. Thank you.

MR. HINOJOSA: No questions, Your Honor.

THE COURT: Okay. You may step down. Thank you.

THE WITNESS: Thank you, Judge.

THE COURT: Anything else?

# Exhibit B

# PORT ISABEL ECONOMIC DEVELOPMENT CORPORATION MINUTES OF A SPECIAL MEETING

**DATE:**              Thursday, February 7, 2013

**TIME:**              6:00 P.M.

**PLACE:**             City Commission Chamber Meeting Room
                       305 East Maxan Street
                       Port Isabel, Texas 78578

**MEMBERS PRESENT:** Scott Friedman, Chairman
                       Guillermo "Memo" Torres, Vice chairman
                       Inocente Zurita, Secretary
                       Robin S. Ochoa, Treasurer
                       Juan Jose "JJ" Zamora, Board Member

**MEMBERS ABSENT:**   Maria de Jesus "MJ" Garza, Board Member
                       Larry R. Ellis, Board Member

**ALSO PRESENT:**     Janie Villarreal, EDC Administrator
                       Rene Nava, Finance Director
                       Rafael Tapia, Reyna & Associates

## ORDER OF BUSINESS

### I. CALL TO ORDER

Chairman Scott Friedman called the meeting to order at 6:00 p.m., noting that there was a quorum and Board Members Maria de Jesus "MJ" Garza, and Larry R. Ellis were not present.

### II. PLEDGE OF ALLEGIANCE

All: I pledge allegiance to the flag of the United States of America, and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all.

Honor the Texas flag; I pledge allegiance to thee, Texas, one state under God, one and indivisible.

### III. CITIZENS FORUM

There were no citizens in attendance who wished to address the EDC Board.

### IV. CONSENT AGENDA ITEMS

1. **Approval of the Minutes.**
   - **Budget Workshop & Regular Meeting – August 29, 2012**
   - **Regular Meeting – October 17, 2012**

Inocente Zurita motioned, second by Commissioner Juan Jose "JJ" Zamora, all voting aye to approve the minutes. Motioned carried.

### V. SPECIAL REPORTS

## 1. 2011 Annual Financial Report

Finance Director Rene Nava gave a brief over view of the audit stating that it was a clean report and if board members had question they could contact the Firm of Patillo, Brown & Hill, L.L.P.

## 2. Financial Status Reports November - December 2011

### A. Sales Tax

Sales tax collected:

| | |
|---|---|
| October 2012 - | $203,421.07 (Net paid to EDC - $44,188.60) |
| November 2012 - | $154,301.66 (Net paid to EDC - $31,908.75) |
| December 2012 - | $122,527.70 (Net paid to EDC - $23,965.26) |
| TOTAL COLLECTED - | $480,250.43 (Net paid to EDC - $100,062.61) |

### B. Investments

Account balance after disbursements as of December 31, 2012 was $220,976.53
Logic Investment balance as of December 31, 2012 was $236,211.48
Interest earned as of December 31, 2012 was $151.25

## VI. NEW BUSINESS

1. **Discussion and potential action to approve the loan request from Peter Caceres & Deissy Moreno, Olympian Fitness from the revolving loan program in the amount of $50,000.**

   Commissioner Juan Jose Zamora motioned, second by Robin S. Ochoa, all voting aye to approve. Motioned carried.

2. **Discussion and potential action to approve the loan request from Victor Mar from the revolving loan program in the amount of $75,000.**

   Robin S. Ochoa motioned, second by Inocente Zurita, all voting aye to approve. Motioned carried. For the record Commissioner Guillermo Torres abstained.

3. **Discussion and potential action to approve Resolution 02-07-13-01: a Resolution by the Port Isabel Economic Development Corporation Approving FY 2012 – 2013 Budget Amendment No. 1**

   Inocente Zurita motioned, second by Commissioner Guillermo Torres, all voting aye to approve. Motion Carried.

4. **Discussion and potential action to approve the bills paid.**

   Commissioner Guillermo Torres motioned, second by Inocente Zurita, all voting aye to approve. Motion Carried.

## VII. ADJOURNMENT

Scott Friedman called for a motion to adjourn.

Commissioner Guillermo Torres motioned, second by Commissioner Juan Jose Zamora, all voting aye to adjourn at 6:15 p.m., motion carried.

Port Isabel Economic Development Corporation

_____
Scott Friedman, Chairman

ATTEST:


_____
Janie Villarreal, EDC Administrator

# Exhibit C

May 14, 2015

RECEI

MAY 1 2015

Office of the City Clerk

Edward P. Meza
City of Port Isabel
305 E Maxan St
Port Isabel TX 78578

Susie Alcocer
City of Port Isabel
305 E Maxan St
Port Isabel TX 78578

*Via Hand Delivery*

Dear Mr. Meza and Ms. Alcocer,

This letter is to call for a special meeting of the City Commission of the City of Port Isabel, for Tuesday, May 19, 2015 at 7:00 pm at the City Hall, pursuant to Section 2.02 of the Port Isabel City Charter.

The following is the agenda for this meeting, and should be posted in the order and form set out here:

1. Call to Order; Roll Call.

2. Invocation.

3. Pledge of Allegiance.

4. Public Comment/Open Forum

5. Consideration and possible action to terminate any non-employee contractual relationship for legal services between Robert Collins, or any affiliated entity, and the City of Port Isabel, effective immediately.

6. Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin Cantu and J.J. Zamora were disqualified from office, and to rescind any action taken to remove them.

7. Consideration and possible action to rescind approval of the retention of outside counsel to represent the city and members of the city commission in pending and/or threatened litigation, and to rescind approval to pay any fees incurred by outside counsel, effective

May 6, 2015, consistent with a finding under Ordinance Number 364 that the pending and/or contemplated litigation to which members or former members of the city commission may be a party does not arise from actions taken for or on behalf of the city, and further finding that such fees are not reasonable.

8. Consideration and possible action to rescind approval of the retention of outside counsel to investigate and/or prosecute potential violations of the city charter, and other matters.

9. Consideration and possible action to appoint a city attorney.

10. Executive Session; Closed Session

    A. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city attorney, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

    B. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

    C. To deliberate the appointment, employment or duties of an interim city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

11. Open Session

    A. Action relative to executive session.
    B. Action relative to executive session.
    C. Action relative to executive session.

12. Adjourn.

You are hereby directed to post this meeting in conformity with the requirements of the Port Isabel City Charter and the Texas Open Meetings Act, and to distribute notice of this meeting to the members of the City Commission.

Sincerely,

JUAN JOSE "JJ" ZAMORA
City Commissioner, Place 1

MARTIN C. CANTU
City Commissioner, Place 3

# Exhibit D

THE STATE OF TEXAS §
COUNTY OF CAMERON §
CITY OF PORT ISABEL §

NOTICE OF A SPECIAL MEETING
OF THE PORT ISABEL CITY COMMISSION

NOTICE IS HEREBY GIVEN

Pursuant to Chapter 551, Title 5, of the Texas Government Code, the Texas Open Meetings Act, notice is hereby given that the Port Isabel City Commission in accordance with Article II, Section 2.11 of the Charter of said City, will convene a Special Meeting at the City Commission Chambers Meeting Room, located at 305 E Maxan Street, on Tuesday, May 19, 2015 at 7:00 pm for the purpose of discussing the following items:

NOTE: The City Commission of the City of Port Isabel reserves the right to discuss any item in Closed Session whenever authorized under the Texas Open Meetings Act, Chapter 551, of the Texas Government Code. The City Commission may discuss the items on this agenda in any order.

The City of Port Isabel does not discriminate on the basis of disability in the admission of, access to, treatment of, employment in its programs, activities, or public meetings. Any individual with a disability in need of accommodation is encouraged to contact the Office of the City Secretary at 956-943-2682 at least 24 hours prior to the scheduled meeting to make proper arrangements.

ORDER OF BUSINESS

I.     CALL TO ORDER

II.    INVOCATION

III.   PLEDGE OF ALLEGIANCE

IV.    PUBLIC COMMENT/ OPEN FORUM

Please Note:

-Any person with business before the Commission not scheduled on the Agenda as a Public Hearing may speak to the commission.
-Public Comment Forms are located on the table at the entrance of the City Chambers Meeting Room. (For further information, contact the Office of the City Secretary).
-The speaker must state his or her full name before speaking.
-There is a three (3) minute time limit per speaker.
-Public Comment Forms are not accepted after 6:45 pm.
-PowerPoint presentations are not conducted during the public comment period.

## V. NEW BUSINESS

1. Consideration and possible action to terminate any non-employee contractual relationship for legal services between Robert Collins, or any affiliated entity, and the City of Port Isabel, effective immediately.

2. Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin C. Cantu and Juan Jose "J.J." Zamora were disqualified from office, and to rescind any action taken to remove them.

3. Consideration and possible action to vacate any finding by the Port Isabel City Commission on April 13, 2015 that Martin C. Cantu and Juan Jose "J.J". Zamora were disqualified from office, and to rescind any action taken to remove them.

4. Consideration and possible action to rescind approval of the retention of outside counsel to represent the city and members of the city commission in pending and/or threatened litigation, and to rescind approval to pay any fees incurred by outside counsel, effective May 6, 2015, consistent with a finding under Ordinance Number 364 that the pending and/or contemplated litigation to which members or former members of the city commission may be a party does not arise from actions taken for or on behalf of the city, and further finding that such fees are not reasonable.

5. Consideration and possible action to rescind approval of the retention of outside counsel to investigate and/or prosecute potential violations of the city charter, and other matters.

6. Consideration and possible action to appoint a city attorney.

7. Consideration and possible action to approve Resolution No. 05-19-15-01: A Resolution by the City Commission of Port Isabel, Texas to appoint or re-appoint one (1) member to the Port Isabel Economic Development Corporation Board. (Commissioner Jeffery David Martinez)

## VI. EXECUTIVE SESSION; CLOSED SESSION

1. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city attorney, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
2. To deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of the city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).
3. To deliberate the appointment, employment or duties of an interim city manager, pursuant to the Texas Open Meetings Act, Section 551.074 (1)(a).

## VII. ACTION TAKEN FROM CLOSED SESSION; IF ANY

1. Action relative to executive session.

2. Action relative to executive session.

3. Action relative to executive session.

VIII. ADJOURNMENT OF MEETING

CERTIFICATION

I certify that the above notice of a Special Meeting of the City Commission of the City of Port Isabel, Texas is true and correct; and that I posted such notice on a bulletin board at City Hall, a place convenient and readily accessible to the public on the 16th day of May, 2015 at ____ am/pm, in accordance with the Texas Open Meetings Act (Texas Government Code, § 551.041-§551.050).

_____
Nadini P. Jee,
Assistant City Secretary
City of Port Isabel, Texas

CERTIFICATION OF REMOVAL

I certify that the agenda of items to be considered by the City Commission was removed by the City Secretary's Office from the Port Isabel City Hall bulletin board on the _____ day of _____, 2015.

_____
Office of the City Secretary

RECEIVED

2015-DCL-02342
6/1/2015 10:02:55 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
5500790

CAUSE NO. 2015-DCL-02342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. AND | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | CAMERON COUNTY, T E X A S |
| | § | |
| CITY OF PORT ISABEL, TEXAS; | § | |
| MARIA de JESUS GARZA, | § | |
| GUILLERMO TORRES, JOE E. VEGA, | § | |
| and KEN PAXTON, THE ATTORNEY | § | |
| GENERAL OF TEXAS | § | |
|     Defendants. | § | 444th JUDICIAL DISTRICT |

## ORDER ON RECONSIDERATION AND REINSTATEMENT

BE IT REMEMBERED that on the_____ day of May, 2015, came on to be heard the

Plaintiff's Motion for Reconsideration of Reinstatement. All parties appeared through their

respective attorneys of record and submitted argument and authorities to the Court. After

hearing such argument and considering the pleadings and briefs filed by the parties, the Court is

of the opinion that Plaintiff's Motion should be DENIED.

It is hereby Ordered by this Court that the Plaintiffs' Motion to Reinstate is DENIED.

SIGNED AND ENTERED this _____ day of _____, 2015.


_____
JUDGE PRESIDING

COPIES TO:
Robert L. Collins, P.O. Box 7726, Houston, Texas 77270-7726
Michael R. Cowen, 62 E. Price Road, Brownsville, TX 78521
Frank E. Perez , 300 Mexico Boulevard, Brownsville, TX 78520
Gilbert Hinojosa, 622 East St. Charles St., Brownsville, Texas 78520

7

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' NOTICE OF NONSUIT WITHOUT PREJUDICE OF GUILLERMO TORRES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Juan Jose "JJ" Zamora Sr., and Martin C. Cantu and file this their Notice of Non-Suit Without Prejudice Against Defendant Guillermo Torres and would show unto the court the following:

I.

Please take notice that Plaintiffs hereby non-suits without prejudice, all of their respective claims and causes of action against Defendant Guillermo Torres. Plaintiffs respectfully request that the court sign an order of Non-suit without prejudice regarding all of Plaintiffs respective claims and causes of action against Defendant Guillermo Torres.

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the court take notice of Plaintiffs non-suit without prejudice and sign an order of Non-Suit without prejudice regarding all of Plaintiffs respective claims and causes of action against Defendant Guillermo Torres.

Respectfully submitted,
**Law Office of Salinas Flores**
2011 North Conway Ave.
Mission, Texas 78572
Tel: (956) 584-3900
Fax: (956) 580-9688

_Ricardo Salinas_ w/pw

Ricardo L. Salinas
Texas Bar No.: 00786220
rsalinaslaw@yahoo.com

## CERTIFICATE OF SERVICE

I certify that on June 10, 2015, a true and correct copy of the foregoing instrument was served to the following:

Robert L. Collins
Robert L. Collins & Associates
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467 8883 Fax
houstonlaw2@aol.com

Michael R. Cowen
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
(956) 541-4981
(956) 504-3674 Fax
michael@cowenlaw.com

Frank E. Perez
Frank E. Perez & Associates, PC
300 Mexico Blvd.
Brownsville, Texas 78520
(956) 504-5403
(956) 504-5991 Fax
fperez@feperezandassociates.com

Gilberto Hinojos

CAUSE NO. 2015-DCL-2342

| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## ORDER OF DISMISSAL WITHOUT PREJUDICE OF GUILLERMO TORRES

On this _____ day of _____, 2015, came on to be considered Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU, Notice of Nonsuit Without Prejudice concerning any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant GUILLERMO TORRES, in the above-styled and numbered cause and the Court is of the opinion that same should be granted.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant GUILLERMO TORRES are hereby dismissed without prejudice.

SIGNED on this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

cc: houstonlaw2@aol.com
    michael@cowenlaw.com
    fperez@feperezandassociates.com
    rsalinaslaw@yahoo.com

FILED
2015-DCL-02342
6/10/2015 12:04:26 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
5618297

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU | § § § | IN THE DISTRICT COURT OF |
| V. | § § | 444TH JUDICIAL DISTRICT |
| CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA, GUILLERMO TORRES, JOE E. VEGA, KEN PAXTON THE ATTORNEY GENERAL OF TEXAS | § § § § § § | CAMERON COUNTY, TEXAS |

## ORDER OF DISMISSAL WITHOUT PREJUDICE OF GUILLERMO TORRES

On this 15th day of ___June___, 2015, came on to be considered Plaintiffs, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU, Notice of Nonsuit Without Prejudice concerning any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant GUILLERMO TORRES, in the above-styled and numbered cause and the Court is of the opinion that same should be granted.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that any and all individual claims Plaintiff, JUAN JOSE "JJ" ZAMORA, SR. and MARTIN C. CANTU have asserted against Defendant GUILLERMO TORRES are hereby dismissed without prejudice.

SIGNED on this the ___15th___ day of ___June___, 2015.

_____
JUDGE PRESIDING

cc: houstonlaw2@aol.com
michael@cowenlaw.com
fperez@feperezandassociates.com
rsalinaslaw@yahoo.com

FILED 1:30 o'clock P M
ERIC GARZA - DISTRICT CLERK

JUN 16 2015

DISTRICT COURT OF CAMERON COUNTY, TEXAS
By_____ Deputy #19